Robert COOLEY and Rita Cooley, d/b/a Cooley Dairy; Donald Weed; Ben Konishi, D.V.M.; Pamela Ann Konishi, Mark Konishi; and Jeffrey Konishi, Plaintiffs–Appellees and Cross–Appellants,

v.

BIG HORN HARVESTORE SYSTEMS, INC., a Colorado corporation, and A.O. Smith Harvestore Products, Inc., a Delaware corporation, Defendants–Appellants and Cross–Appellees.

No. 84CA1415.

Colorado Court of Appeals,
Div. III.

June 16, 1988.

Rehearing Denied Aug. 11, 1988.

Certiorari Granted (Cooley) Jan. 17, 1989.

Law Offices of E. Gregory Martin, E. Gregory Martin, Melanie R. Vogl, Boulder, for plaintiffs-appellees and cross-appellants.

Banta, Hoyt, Banta, Greene, Hannen & Everall, Richard J. Banta, Edward A. Gleason, Scot W. Nolte, Englewood, for defendant-appellant and cross-appellee Big Horn Harvestore Systems, Inc.

Hansen, Howe, Holmes & Porter, P.C., Michael S. Porter, Denver, for defendant-appellant and cross-appellee A.O. Smith Harvestore Products, Inc.

VAN CISE, Judge.

Defendants, Big Horn Harvestore Systems, Inc. (Big Horn) and A.O. Smith Harvestore Products, Inc. (AOSHPI), appeal the judgment against them for $245,-077.26 on claims of negligence and failure

of essential purpose of a limited remedy constituting breach of contract. Plaintiffs cross-appeal the reduction in the jury award from a total of $324,028.66 to $245,077.26. We affirm in part, reverse in part, and remand with directions.

This case arises out of the purchase and use of a grain silo by plaintiffs Robert and Rita Cooley and its use by all plaintiffs. The silo included as its principal feature an automated feed storage and dispensing system manufactured by defendant AOSHPI and sold and assembled by an independent dealer of AOSHPI, Big Horn. The sale was made pursuant to a written purchase agreement which included a warranty and disclaimers of the manufacturer AOSHPI and Big Horn. The contract limited AOSHPI's remedial obligation for any product defects to repairing or replacing any defective product or part.

The purchased Harvestore system consisted of a large steel silo structure and various automation devices used to distribute the feed from inside the silo to the livestock. This system was represented as being "oxygen-limiting" by means of a breather system that is supposed to limit the amount of oxygen in the silo and thus make it capable of storing feed for long periods of time without a deterioration in the quality of the feed.

There was testimony that in 1978 the Cooleys were contacted by Gene Tenson, Big Horn's representative. Over the next two years, Tenson visited the dairy farm approximately 80 times, during which Tenson left a dozen promotional films and a projector so that the Cooleys could view the materials. He also left many pamphlets and a book for their information.

In 1980, the Cooleys purchased the Harvestore system from Tenson and began using it. Thereafter, plaintiffs noticed diarrhea and weight loss in their cows and a decline in milk production. There was testimony that over the next year and a half, Tenson gave plaintiffs extensive and repeated advice, which they utilized, on the proper feed ration for their cows. He advised continued use of the silo and of the feed contained therein, and repeatedly asserted that there was nothing wrong with the silo or the feed. Plaintiffs' cows continued to be sickly, milk production declined, and some cows died. Finally, plaintiffs sold the remaining cows and brought this action.

After a two-week trial, the jury returned a verdict in favor of plaintiffs and against Big Horn in the amount of $87,723.77 on plaintiffs' claim of negligence, finding Big Horn 90% negligent and plaintiffs 10% negligent. This resulted in a net award of $78,951.40 to plaintiffs. The jury also awarded a verdict against defendants AOSHPI and Big Horn in the amount of $245,077.26 on plaintiffs' claim of breach of contract. Thereafter, the trial court reduced plaintiffs' total verdict to $245,077.26, based on its finding that the negligence and breach of contract verdicts were duplicative of the damages for loss of the cows.

## I. *Defendant AOSHPI*

AOSHPI contends that since it was not given notice of breach of contract, it cannot be held liable. We agree.

The U.C.C. requires that "[t]he buyer must within a reasonable time after he discovers or should have discovered any breach, notify *the seller* of breach or be barred from any remedy." Section 4–2–607(3)(a), C.R.S. (emphasis added).

The notice requirement serves three purposes. It provides the recipient with an opportunity (1) to correct any defect, (2) to prepare for negotiation and litigation, and (3) to protect itself against stale claims being brought. *Prutch v. Ford Motor Co.*, 618 P.2d 657 (Colo.1980); J. White & R. Summers, *Uniform Commercial Code* § 11–10 at 421 (1980).

While it is uncontroverted that the seller (Big Horn) received notice of plaintiffs' problems with the Harvestore system, the manufacturer (AOSHPI) was not given notice by any of the plaintiffs. In addition, there is no evidence in the record that Big Horn gave notice to AOSHPI.

Colorado appellate decisions have not fully addressed whether, and under what cir-

cumstances, notice of breach of contract must be given to a remote manufacturer in order for the manufacturer to be held liable for breach of contract.

In *Prutch v. Ford Motor Co., supra,* concerning a farmer who purchased farm equipment, our supreme court disapproved of this court's holding in *Prutch v. Ford Motor Co.,* 40 Colo.App. 129, 574 P.2d 102 (1977) that direct notice was required from the ultimate consumer to the remote manufacturer in all cases. It noted in dictum that whether notice would be required to the remote manufacturer might vary with the facts of each case. In that case, notice was given, although not direct, to the remote manufacturer.

In *Palmer v. A.H. Robins Co.,* 684 P.2d 187 (Colo.1984), the supreme court held that notice to the immediate seller was adequate to meet the requirements of § 4–2–607(3), thereby relieving the plaintiff of notice to the remote seller. *Palmer* concerned a personal injury claim brought by an unsophisticated consumer of a medical product. As the *Palmer* court noted, the notice requirement to a remote seller "as applied to personal injuries ... becomes a booby-trap for the unwary. The injured consumer is seldom 'steeped in the business practice which justifies the rule.' ..." *See* W. Prosser, *Torts* § 97 at 655 (4th ed. 1971).

Unlike the plaintiff in *Palmer,* the plaintiffs here were not personally injured by the product. They suffered property loss only. In addition, the Cooleys had been dairy farmers virtually all of their working lives. Moreover, they investigated the Harvestore system for two years before purchasing it. Under these circumstances, there being no opposing evidence, plaintiffs, as a matter of law, were commercial buyers rather than unsophisticated consumers.

We hold that if a commercial buyer seeks recovery from a manufacturer for breach of contract resulting in property damage, the manufacturer must be given timely notice of the breach in order to be held liable for that loss. The manufacturer needs timely notice at least as much as the immediate seller. *See* J. White & R. Summers, *supra.*

In light of our holding, plaintiffs' failure to show direct or indirect notice to AOSHPI of the breach of contract precludes plaintiffs, as a matter of law, from any remedy against AOSHPI. *Shultz v. Linden–Alimak, Inc.,* 734 P.2d 146 (Colo. App.1986); *White v. Mississippi Order Buyers, Inc.,* 648 P.2d 682 (Colo.App.1982); § 4–2–607(3)(a), C.R.S.

We need not address the remainder of AOSHPI's issues in light of our disposition of the notice issue.

## II. *Defendant Big Horn*

### A. Breach of Contract Claim

Big Horn contends that the jury verdict against it based on plaintiffs' claim of failure of essential purpose leading to breach of contract was unsupported by evidence. We agree.

Failure of essential purpose of a remedy leading to breach of contract is premised on a breach of warranty. Section 4–2–719(2), C.R.S. Therefore, we must examine the warranty made to plaintiffs by Big Horn.

The contract warranty provided:

"WARRANTY OF MANUFACTURER AND SELLER

"If within the time limits specified below, any product sold under this purchase order, or any part thereof, shall prove to be defective in material or workmanship ... or the Manufacturer, at its option, will repair or allow credit for such part. The Seller [Big Horn] *warrants only that the foundation will be properly installed and that the product will be erected in strict conformance with the Manufacturer's specifications.* (emphasis supplied)

The contract also provided in bold-face type:

"NO OTHER WARRANTY, EITHER EXPRESS OR IMPLIED AND INCLUDING A WARRANTY OF MERCHANTA-

BILITY AND FITNESS FOR A PARTICULAR PURPOSE HAS BEEN MADE OR WILL BE MADE ON BEHALF OF THE ... SELLER."

Such a contract provision is permissible under the Colorado Uniform Commercial Code. Section 4–2–316(2), C.R.S., provides: "[T]o exclude or modify the implied warranty of merchantability or any part of it, the language must mention merchantability and in case of a writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous. Language to exclude all implied warranties of fitness is sufficient if it states, for example, that there are no warranties which extend beyond the description on the face hereof."

It would appear from the plain words of the warranty that Big Horn limited its warranty to the installation of the foundation and the erection of the product. However, plaintiffs contend, in essence, that evidence was presented to show conduct by Big Horn which modified and broadened the warranty.

While subsequent conduct can modify a warranty, *see* § 4–2–313, C.R.S. (Official Comment 7), such a modification must still meet the requirements of § 4–2–209, C.R.S. This section states that the requirements contained in the statute of frauds (§ 4–2–201, C.R.S.) must be satisfied. In this case, since there was a sale of goods for more than $500, the statute of frauds requires that any modification of the contract be in writing and signed by Big Horn.

No evidence of a written modification was submitted. Therefore, Big Horn's warranty liability is limited to that prescribed in the contract—the proper installation of the foundation and the erection of the system in strict conformance with the manufacturer's specifications.

If there is competent evidence to support a jury verdict, it will not be disturbed on appeal. *Aetna Casualty & Surety Co. v. Crissy Fowler Lumber Co.,* 687 P.2d 514 (Colo.App.1984). But if a verdict is "manifestly against the weight of the evidence," it must be set aside. *Dobbins v. Graer,* 50 Colo. 10, 114 P. 303 (1911); *McGraw v. Kerr,* 23 Colo.App. 163, 128 P. 870 (1912); C.R.C.P. 59(a)(6) (in effect at time of this suit).

No evidence was offered to show either that the foundation for the system was not properly installed or that the product was not erected in strict conformance with the manufacturer's specifications. Accordingly, the judgment against Big Horn based on breach of contract must be set aside.

### B. Negligence

Big Horn contends that the following clause of the sales agreement is a bar to plaintiffs' negligence claim:

"THE BUYER RECOGNIZES THAT THE EXPRESS WARRANTY SET FORTH ABOVE IS THE EXCLUSIVE REMEDY TO WHICH HE IS ENTITLED AND HE WAIVES ALL OTHER REMEDIES, STATUTORY OR OTHERWISE."

We do not agree.

Plaintiffs did not base their negligence claim on the sales contract. Instead, that claim is premised on Big Horn's conduct in "formulating and prescribing a feed ration program which would be suitable for feeding to plaintiffs' dairy cows." Liability attaches in this case, not by virtue of any failure to perform a contractual obligation, but because of breach of a duty of care. *See Iverson v. Solsbery,* 641 P.2d 314 (Colo. App.1982).

Moreover, even if plaintiffs' negligence claim were based on the sales contract, the clause relied on by Big Horn does not bar the negligence claim. Generally, as a matter of public policy, parties cannot contract away potential liability for their own negligence. *Threadgill v. Peabody Coal Co.,* 34 Colo.App. 203, 526 P.2d 676 (1974). Only where the agreement is, among other things, express and unequivocal, have such clauses been enforced. *See, e.g., Jones v. Dressel,* 623 P.2d 370 (Colo. 1981) (contract used the word "negligence").

Here, the clause does not expressly mention "negligence," "tort," or similar

cognates. Therefore, we conclude that plaintiffs may maintain a claim of negligence.

Big Horn also alleges that it had no duty to plaintiffs in regard to what feed rations should be fed to plaintiffs' cows. Again, we disagree.

■ Whether a particular defendant owes a duty to a particular plaintiff is a question of law. *Leppke v. Segura,* 632 P.2d 1057 (Colo.App.1981). In the circumstances of this case, where Big Horn, through its representative, repeatedly gave specific information and recommendations as to the proper rations for plaintiffs' cows, we find there arose a duty of care.

■ Whether the duty owed has been breached is a question for the jury. *City of Aurora v. Loveless,* 639 P.2d 1061 (Colo.1981). The jury's finding will not be disturbed on appeal where, as here, there is evidence, albeit conflicting, to support the verdict. *Miller v. Mountain Valley Ambulance Service, Inc.,* 694 P.2d 362 (Colo. App.1984).

### C. Negligence Damages

Big Horn would have us deny damages to plaintiffs for their losses resulting from the deaths or reduced sales prices of the cows and their reduced milk profits because, Big Horn asserts, this is economic loss. Plaintiffs contend that they are entitled to these damages. We agree with plaintiffs.

The cases cited by Big Horn in which economic loss was disallowed are based on strict product liability. *See, e.g., Hiigel v. General Motors Corp.,* 190 Colo. 57, 544 P.2d 983 (1975). In contrast, plaintiffs' claim arises from Big Horn's failure to exercise reasonable care when giving nutritional advice to plaintiffs rather than from defects in the silo.

■ In a typical negligence case, a party is entitled to recover those damages which naturally and probably result from the negligence of another. *Cope v. Vermeer Sales & Service,* 650 P.2d 1307 (Colo. App.1982). This is true regardless of whether the parties are in a commercial relationship with each other, as long as one party negligently injures the other's property. *See Cope, supra; see also Power Equipment Co. v. Fulton,* 32 Colo.App. 430, 513 P.2d 234 (1973).

■ The principle of making the injured party whole underlies the damage award in all negligence cases. *Cope, supra.* Here, the award should include reimbursement for dairy cow losses and for loss of net profits because of reduced milk production. *Cope, supra; Power Equipment, supra.* In its ruling on new trial motions, the trial court admitted that it did not allow the jury to consider lost profits in determining the damages from Big Horn's negligence.

We can only speculate what elements of damage and what mitigating factors, if any, were considered by the jury in arriving at its original awards on the breach of contract and negligence claims, and to what extent there was any duplication between the two. Inasmuch as we are reversing the judgment on the contract claim and affirming the judgment of liability on the negligence claim, the appropriate remedy is a new trial on the issue of the amount of damages incurred by plaintiffs as a result of Big Horn's negligence. *See Wulff v. Christmas,* 660 P.2d 18 (Colo.App.1982); *Sanchez v. Rice,* 40 Colo.App. 481, 580 P.2d 1261 (1978).

### III.

In view of our disposition of the case in parts I and II above, we do not address the other contentions of the parties.

On the negligence claim, the judgment in favor of plaintiffs and against Big Horn is affirmed as to liability and the allocation of fault, and the cause is remanded for a new trial on the issues of damages and mitigation. The judgment on the breach of contract claim is reversed and, on remand, that claim should be dismissed.

STERNBERG and JONES, JJ., concur.