Peter SCOGNAMILLO and Harry Faircloth, Plaintiffs–Appellees and Cross–Appellants,

v.

Robert E. OLSEN, individually and as partner of Olsen & Guardi; and Olsen & Guardi, a partnership, Defendants–Appellants and Cross–Appellees.

No. 87CA1489.

Colorado Court of Appeals, Division II.

Feb. 1, 1990.

Rehearing Denied March 8, 1990.

Certiorari Denied Aug. 27, 1990.

**1358**

O'Connor & Hannan, Paul G. Goss, Marianne K. Lizza, Denver, for plaintiff-appellee and cross-appellant Peter Scognamillo.

Radetsky & Shapiro, P.C., Jennifer L. Donaldson, Jay Stuart Radetsky, Denver, for plaintiff-appellee and cross-appellant Harry Faircloth.

Rothgerber, Appel, Powers & Johnson, James R. Everson, Mark Spitalnik, Joseph E. Kovarik, JoAnn L. Vogt, Denver, for defendant-appellant and cross-appellee Robert E. Olsen.

Hall & Evans, Edward H. Widmann, Barbara Green, Malcolm S. Mead, Denver, Whittman & McCord, Sherwin V. Wittman II, Colorado Springs, Whittman & McCord, Cynthia J. Hyman, Denver, for defendant-appellant and cross-appellee Olsen & Guardi, a partnership.

Opinion by Judge SMITH.

In this legal malpractice action, defendants, attorney Robert E. Olsen (Olsen) individually, and the law firm of Olsen and Guardi, appeal from a judgment entered on a jury verdict awarding plaintiff Peter Scognamillo, $200,187.49, and plaintiff Harry Faircloth, $615,052.40. Both plaintiffs cross-appeal a reduction in their judgments based on a finding of comparative negligence and the court's order reducing each verdict by $27,000. Plaintiff Faircloth also cross-appeals the trial court's order denying him prejudgment interest. We affirm.

The judgment at issue here arose from defendants' representation of plaintiffs in a federal district court action entitled *Alling v. American Tool & Grinding (Alling)*. This case involved claims by five investors in American Tool and Grinding, a company formed by plaintiffs and several others to sell machine tool distributorships. The *Alling* investors brought claims against plaintiffs and others for fraud, breach of contract, and civil conspiracy in the sale of the distributorships. They sought recovery of both actual and punitive damages. Defendant Olsen represented all defendants named in the *Alling* case, including both plaintiffs here. That action was tried to the court in November 1981.

During the course of the *Alling* trial, the *Alling* investors offered to settle for $40,000 in cash plus a selection of inventory from American Tool and Grinding, or alternatively for $54,000 cash. Both of the plaintiffs here agreed to this offer. However, a third defendant (Volger) did not, and thus, no settlement was reached prior to the conclusion of trial.

In December 1981, after trial, Olsen and his firm, defendants here, withdrew as counsel for all of the *Alling* defendants. In June 1982, the *Alling* court entered its findings of fact and conclusions of law. It found each defendant to be part of a conspiracy to defraud and directed that judgment enter in favor of the *Alling* investors for $214,830 in actual damages and $849,020 in punitive damages. These damages were awarded jointly and severally against all *Alling* defendants.

*Alling* defendant Volger appealed this judgment. The United States Court of Appeals for the Tenth Circuit affirmed the judgment on compensatory damages, but reversed as to Volger as to the amount of punitive damages and remanded for a new determination. On remand, Volger's punitive damages were reduced to $300,000.

Scognamillo and Faircloth hired a different law firm to appeal the *Alling* judgment. However, that appeal was ultimately dismissed as having been untimely filed. Plaintiff Scognamillo subsequently entered into an agreement with the *Alling* investors releasing him from all claims, appeals, and judgments contingent upon his payment of $200,000.

In September 1983, Scognamillo and Faircloth filed this action against defendants (Olsen) seeking damages based on their claim that Olsen negligently represented them in the *Alling* case. The es-

sence of plaintiffs' negligence claim was that Olsen had failed to evaluate properly and advise them of the full extent of their potential liability, and that Olsen had undertaken and continued representation of all three *Alling* defendants notwithstanding their divergent interests in the company, their personal animosities toward one another, as well as their conflicting views about settlement. They alleged, that, but for Olsen's negligence, they would have settled prior to entry of the *Alling* judgment. Plaintiffs claimed actual and compensatory damages in an amount equal to their liability under the *Alling* judgment or, in the case of Scognamillo, the amount for which he settled.

During a 30–day jury trial, conflicting testimony was presented by legal experts, plaintiffs, and defendant Olsen. At the conclusion of trial, the trial court instructed the jurors that, if they found for plaintiffs, they were to assess damages based on plaintiff Faircloth's liability for compensatory and punitive damages under the *Alling* judgment and plaintiff Scognamillo's settlement of the *Alling* judgment. The jury was also instructed to consider the issue of plaintiffs' contributory negligence.

After deliberation, the jury found in favor of plaintiff Faircloth in the amount of $1,133,735, with 59% negligence charged to Olsen and 41% to Faircloth. It found in favor of plaintiff Scognamillo in the amount of $275,948.60 with 74% negligence charged to Olsen and 26% to Scognamillo.

In granting one of the many post-trial motions, the trial court ordered a reduction in each plaintiff's verdict of $27,000. This represented half the amount of the *Alling* plaintiffs' settlement offer. It also denied a motion by plaintiff Faircloth for prejudgment interest. This appeal followed.

## I.

■ Olsen contends that the trial court abused its discretion in granting plaintiffs' motion in limine to exclude, on grounds of relevancy, all evidence relating to the plaintiffs' failure to appeal the *Alling* judgment. Defendants' expert, if permitted to do so, would have testified that, in his

opinion, had plaintiffs appealed, the judgment against them would have been reduced. Defendants argue that such testimony was substantially relevant to their claim that plaintiffs failed to mitigate their damages. We disagree.

Evidence is relevant only if it tends to make the existence of a fact that is of consequence to the resolution of an issue in the action more or less probable. *Vialpando v. People*, 727 P.2d 1090 (Colo.1986). The issue here is whether plaintiffs failed to mitigate their damages and should thus suffer a reduction in their claimed damages.

One claiming damages for negligence has the duty to take such steps as are reasonable under the circumstances to mitigate or minimize those damages. Any damages which result from a failure to take such reasonable steps cannot be awarded. *Valley Development Co. v. Weeks*, 147 Colo. 591, 364 P.2d 730 (1961).

In order for the trier of fact, in the context of this case, to find a failure to mitigate damages, it must first find that plaintiffs failed to take reasonable steps to perfect appeals from the *Alling* judgment. *Only* if this issue is resolved against plaintiffs does the issue of whether such appeal would probably have resulted in a reduction of plaintiffs' damages become relevant to the disposition of the case.

Here, there was no evidence, either offered or already in the case, which tended to prove that plaintiffs failed to take reasonable steps to perfect their appeals. Quite to the contrary, it was undisputed that they both employed a reputable law firm, on a timely basis, and instructed it to perfect the appeals. It is likewise undisputed that plaintiffs' appeals, although ultimately filed, were subsequently dismissed as untimely.

There is no evidence in the record, and none was offered, to show that plaintiffs, either by act or omission, were responsible for the failure of their counsel to file timely appeals. Thus, in the absence of such evidence, we must conclude, as a matter of law, that plaintiffs took every reasonable

step necessary to perfect appeals of the adverse *Alling* judgment.

Based upon the foregoing, it is unnecessary for us to address the issue, which was raised and argued, of whether plaintiffs had a "duty" to appeal the adverse *Alling* judgment. Likewise, issues relative to the probable results of such appeals have no relevance to the disposition of the case. The trial court did not, therefore, err in excluding all evidence relative thereto.

## II.

The defendants next contend that the trial court committed several errors with regard to plaintiffs' claim for damages. We find no error.

## A.

■ Defendants first argue that the trial court erred in instructing the jury regarding the amount of damages to be awarded plaintiffs. We disagree.

The amount of damages is generally a question of fact, the resolution of which is vested in the finder of fact. *Great Western Sugar Co. v. Northern Natural Gas Co.*, 661 P.2d 684 (Colo.App.1982), *aff'd sub nom. KN Energy, Inc. v. Great Western Sugar Co.*, 698 P.2d 769 (Colo.1985). However, if the amount of damages is subject to mathematical computation, the trial court may properly compute and instruct the jurors as to the amount of damages they are to award. *Baldwin v. Central Savings Bank*, 17 Colo.App. 7, 67 P. 179 (1901).

Here, the trial court instructed the jurors that if they found in favor of plaintiffs, they were to award each plaintiff the amount he had paid or was required to pay to satisfy the *Alling* judgment. The trial court subsequently offset these awards based on, among other things, the plaintiffs' contributory negligence and the amount the plaintiffs would have paid if the *Alling* case had been settled on the terms to which plaintiffs were willing to agree. Defendants do not dispute these offsets. Thus, the sole issue raised by defendants' contention of error is the pro-

priety of the trial court's instruction establishing the "base" amount of the plaintiffs' award.

In a legal malpractice action, the amount of damages is generally the amount of the judgment entered against the plaintiff in the underlying case. *See Pickens, Barnes & Abernathy v. Heasly*, 328 N.W.2d 524 (Iowa 1983). Accordingly, unless defendants introduced sufficient evidence to show that this general rule was inapplicable, the amount of damages here was indeed fixed upon execution of the *Alling* judgment or, as in the case of plaintiff Scognamillo, entry of a settlement agreement that was intended to satisfy such judgment.

Defendants rely on the following evidence to demonstrate that the amount of damages was not fixed by the prior judgment: (1) The excluded evidence regarding the plaintiffs' failure to appeal the *Alling* judgment; and (2) evidence that plaintiff Faircloth could have mitigated his damages through a settlement similar to plaintiff Scognamillo's.

In light of our holding under Part I of this opinion, defendants' reliance on the excluded evidence is clearly misplaced. Moreover, the significance of plaintiff Faircloth's failure to settle was adequately addressed in a separate mitigation instruction to the jury, further clarified by the trial court at the jury's request, and thus, that failure to settle did not adversely reflect on the propriety of the instruction at issue here.

Based on the foregoing, we conclude that the basic amount of plaintiffs' damages, prior to offsets or reductions, was fixed by the *Alling* judgment. Thus, the trial court did not err in instructing the jury as to these amounts.

## B.

■ The defendants next contend that the trial court erred in allowing plaintiffs to include the punitive damages assessed against them in the *Alling* case as a component of their actual and compensatory damages. They argue that such inclusion

is barred by a number of public policy considerations. We disagree.

Compensatory damages for negligence are those which flow directly and proximately from a defendant's breach of his duty to plaintiff. *Cooley v. Big Horn Harvestore Systems, Inc.*, 767 P.2d 740 (Colo.App.1988). In a legal malpractice action based on an attorney's breach of his duty to represent his client in a prior case, it is the defendant attorney's conduct and its consequences, rather than the conduct of the client that resulted in the underlying case, which governs the analysis of damages. Thus, if the defendant attorney's negligence results in entry of a judgment when there otherwise would have been no judgment, the proper measure of damages is the entirety of the prior judgment regardless of the theory upon which the prior judgment was entered or the nature of the damages assessed thereunder. *Hunt v. Dresie*, 740 P.2d 1046 (Kan.1987).

We see no reason to deviate from these principles in determining the proper measure of damages to be applied here. It is true that, at least as to plaintiff Faircloth, the claimed damages included his liability under the *Alling* judgment for punitive damages. However, the punitive damages contested here are not, as was the case in the *Alling* trial, a separate issue considered and imposed for the purpose of punishing a defendant for wrongful conduct.

A major thrust of the plaintiffs' negligence claim is that defendants had negligently evaluated and advised the plaintiffs during the *Alling* trial, particularly as to their risk of liability for punitive damages and the probable extent thereof. Thus, the punitive damages assessed in the underlying case are part and parcel of the damages plaintiffs suffered as a result of defendants' alleged negligence.

For these reasons, the defendants' arguments against inclusion of the plaintiffs' liability for punitive damages are without merit. Accordingly, the trial court did not err in allowing the punitive damages assessed against the plaintiffs in the *Alling*

trial as a component of plaintiffs' compensatory damages.

## III.

The defendants contend that the trial court committed several errors in the admission of expert and non-expert testimony. We perceive no error.

### A.

■ Defendants first contend that the testimony of *Alling* defendant Volger and plaintiff Scognamillo regarding whether they would have settled the *Alling* case was irrelevant, speculative, and thus inadmissible because it was given "in hindsight." We disagree.

If evidence is relevant, it is admissible unless its probative value is outweighed by the countervailing factors of CRE 403. *See* CRE 401, 402, 403.

In light of other evidence tending to show that plaintiff Scognamillo had, under the original terms of the *Alling* investors' offer agreed to settlement, testimony by Volger and plaintiff Scognamillo that they would have settled if they had been provided with additional or accurate information relevant to establishing that defendants' actions were the cause of plaintiffs' damages. Through cross-examination, defendants were provided a full and fair opportunity to impeach this testimony. Accordingly, we hold that the trial court did not abuse its discretion in admitting the testimony.

### B.

■ Defendants next argue that the trial court abused its discretion in allowing plaintiffs' expert to testify that plaintiffs would have settled if represented in the *Alling* trial by separate counsel. We disagree.

CRE 702 permits expert testimony if "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." The basis for admissibility under CRE 702 is, thus, not that the witness possesses skill in a particular field but

that "the witness can offer assistance on a matter not within the knowledge or common experience of people of ordinary intelligence." *McNelley v. Smith*, 149 Colo. 177, 368 P.2d 555 (1962).

Here, both plaintiffs' experts opined that the *Alling* case would have been settled without trial if Volger, Scognamillo, and Faircloth had been represented by separate counsel. Whether to accept a settlement offer is ultimately the decision of the client. The expert's opinions in this regard focus, therefore, on what a reasonable *client* would have done under the particular circumstances confronting the plaintiffs. Based on the record here, the long experience of the experts relative to client settlement decisions entitled them to opine on this issue, and there was thus no error in receiving their testimony in this regard.

### C.

Finally, defendants argue that because attorney-client communications formed the basis of witness Mitchem's expert opinions, the trial court erred in precluding defendants from cross-examining Mitchem on these communications. We disagree.

The appellate court can look only to the record to determine whether the trial court ruling was correct. Thus, a party cannot overcome a deficiency in the record by statements in a brief. *Colorado National Bank—Boulder v. Zerobnick & Sander, P.C.*, 768 P.2d 1276 (Colo.App.1989).

Inasmuch as. Mitchem was attorney for the *Alling* investors, it would appear on its face that defendants' argument might have merit. However, our review of Mitchem's testimony in the record fails to disclose any evidence that Mitchem based his opinion on communications he had with his clients. Nonetheless, defendants argue that the record shows that their efforts to establish such evidence were "thwarted" by invocation of the very privilege complained of. Thus, they assert that lack of evidence in the record on this issue should not be dispositive.

However, defendants' position in this regard finds no support in the record. Consequently, we reject defendants' position

that Mitchem's opinion was based on privileged attorney-client communications. Accordingly, the trial court did not abuse its discretion in precluding defendant from cross-examining Mitchem on such communications.

Furthermore, the record discloses that Mitchem's financial interests in the outcome of the litigation, including his law firm's percentage interest under a contingent fee arrangement in the *Alling* case, were fully explored on both direct and cross-examination. Thus, defendants' reference to this issue as a basis for error is also without merit.

### IV.

The defendants also assert that the trial court erred in refusing to give various instructions tendered by defendants. We disagree.

### A.

■ Defendants first argue that the trial court, in refusing to give tendered instructions, failed to instruct the jury properly on the issue of causation. Defendants attempt to characterize legal malpractice as different from all other negligence cases, thus requiring an instruction on causation different from that encompassed in *CJI–Civ.3d* 9:28 (1989). We reject that characterization.

Here, the jury properly received an instruction modeled upon *CJI–Civ.3d* 9:28 (1989). Thus, the trial court neither erred in instructing the jury on the issue of causation nor in refusing to give defendants' tendered definitional instructions relating to that issue.

### B.

■ Next, the defendants argue that the trial court erred in failing to give their tendered conflict of interest instructions. We find no merit in this contention.

A party is entitled to have the jury instructed as to his theory of the case if his theory is supported by the law and the evidence. *Federal Insurance Co. v. Pub-*

lic Service Co., 194 Colo. 107, 570 P.2d 239 (1977).

Defendant Olsen testified at trial that he did not at any time perceive the representation of all *Alling* defendants, including both plaintiffs, as presenting issues of actual or potential conflict of interest. Thus, the conflict of interest instructions, tendered by defendants, do not represent the defendants' theory of the case and were properly refused by the trial court.

## V.

■ On cross-appeal, plaintiffs argue that the trial court erred in submitting the issue of contributory negligence to the jury. We disagree.

Plaintiffs argue that because insufficient evidence was admitted to establish that they possessed the skill and training similar to that of defendant Olsen, an attorney, the trial court should have directed a verdict in their favor on the issue of contributory negligence.

In ruling on a motion for directed verdict, the evidence should be reviewed in light most favorable to the opposing party unless the evidence, when so viewed, compels the conclusion that reasonable persons would necessarily reach a verdict in favor of the moving party, the motion should be denied. *McGlasson v. Barger*, 163 Colo. 438, 431 P.2d 778 (1967).

An attorney is entitled to have the jury consider a client's negligence even when the client is not an attorney if it is reasonable to expect the client to understand "the legal obligations or formalities that have to be fulfilled in connection with a particular transaction, notwithstanding erroneous advice or failure to advise." *Cicorelli v. Capobianco*, 90 A.D.2d 524, 453 N.Y.S.2d 21 (1982), *aff'd*, 59 N.Y.2d 626, 449 N.E.2d 1273, 463 N.Y.S.2d 195 (1983).

At trial, there was testimony by defendant Olsen and by plaintiffs themselves that they had experience with lawsuits similar to that brought by the *Alling* investors and that they were aware of the concept of punitive damages. Moreover, there was testimony by defendant Olsen that he had advised plaintiffs as to their exposure for punitive damages and that they should settle for the $54,000 offered by the *Alling* plaintiffs.

From this evidence, a jury could reasonably infer that plaintiffs had enough experience to understand their legal situation and the legal consequences of their actions. Furthermore, from the testimony, the jury could reasonably infer that plaintiffs' failure to settle was, in part, the result of their own negligence. Thus, the trial court properly denied plaintiffs' motion for a directed verdict on the issue of contributory negligence.

## VI.

■ The plaintiffs next argue on cross-appeal that the trial court erred in reducing each plaintiff's verdict to reflect the contemplated settlement offer in the *Alling* case. They assert that because the plaintiffs had only individually agreed to pay $7,500, with the balance to be derived from a tax refund due to Alling, the trial court's reduction of each verdict by $27,000 was improper. We disagree.

As previously discussed, a defendant is liable only for damages proximately caused by his negligent conduct.

It is uncontroverted that the plaintiffs agreed to a settlement proposal which consisted of paying the *Alling* investors $40,000 in cash plus a selection of cutting tools from the American Tool and Grinding inventory or paying a total amount of $54,000 in cash. Moreover, there was testimony that plaintiffs, if they had been properly advised by a reasonably prudent lawyer, would have paid this amount to settle the *Alling* case.

Based on the foregoing, it is clear that the first $54,000 of the plaintiffs' liability under the *Alling* judgment could not have resulted from the alleged negligence of defendants. Accordingly, we hold that the trial court did not abuse its discretion in distributing such amount equally between the plaintiffs through a $27,000 reduction in each of their verdicts.

## VII.

Finally, plaintiff Faircloth contends on cross-appeal that the trial court erred in failing to award interest pursuant to § 5–12–102, C.R.S. (1988 Repl.Vol. 2), on the total amount of the *Alling* judgment including the accrued interest. We disagree.

Interest is *compensation* for the use or detention of money. *See* McDivitt, *Prejudgment Interest as an Element of Damages: Proposed Solutions for a Colorado Problem,* 49 U.Colo.L.Rev. 335 (1977).

Recovery of that compensation may be pursued as prejudgment interest in accordance with the terms of § 5–12–102, C.R.S. (1988 Repl.Vol. 2), or in circumstances in which statutory interest *would not be available,* it may be sought as moratory interest which recognizes interest as a part of compensatory damages. *E.B. Jones Construction Co. v. City & County of Denver,* 717 P.2d 1009 (Colo.App.1986). *See also* Cairns & Tredennick, *Collecting Pre- and Post-Judgment Interest in Colorado: A Primer,* 15 Colo.Law. 753 (May 1986).

Here, the damage figure submitted to the jury already included interest on the principal amount of the *Alling* judgment. This amount represented the plaintiff's loss in the use of his money from the date of the loss (June 7, 1982, the date of the entry of the *Alling* judgment) until the date of the judgment now being appealed (July 2, 1987).

Accordingly, Faircloth has recovered the "loss" he suffered when deprived of money to which he was, through proof of defendants' negligence, legally entitled. Allowing plaintiff to recover interest on this total amount would, in effect, twice compensate plaintiff for his "loss."

Plaintiff's attempt to distinguish interest on damages from interest as damages fails to bolster his argument. Both are means to fulfill one purpose, that is, compensation for loss in use of money arising from defendants' withholding.

Hence, the trial court properly denied plaintiff Faircloth's motion for interest on the total amount of the *Alling* judgment as well as on the accrued interest thereon.

The judgment is affirmed.

TURSI and DAVIDSON, JJ., concur.