784 So.2d 578 (2001)
Elvie GRESHAM, Renard Gresham, Randy Gresham, Joel Gresham, and Wyman Gresham, Appellants,
v.
Wilton L. STRICKLAND, Strickland and Seidule, P.A., Appellees.
No. 4D00-194.
District Court of Appeal of Florida, Fourth District.
May 16, 2001.
*579 Warren R. Trazenfeld of Warren R. Trazenfeld, P.A., Miami, for appellants.
William Zei of Peterson, Bernard, Vandenberg, Zei, Geisler & Martin, Fort Lauderdale, and Marjorie Gadarian Graham of Marjorie Gadarian Graham, P.A., Palm Beach Gardens, for appellees.
WARNER, C.J.
This is an appeal from a final summary judgment entered against appellants in their legal malpractice action against appellee, an attorney. Appellee represented appellants, all beneficiaries of an estate, in connection with the estate's claim for the decedent's wrongful death. Appellants alleged that because their attorney, who was not the attorney for the estate, failed to investigate and properly advise them of the potential punitive damage claim, the punitive damage claim was waived in return for an admission of liability. Later, however, appellants discovered that the claim had significant value and sued their attorney. We hold that because the claim for punitive damages rested solely with the personal representative of the estate, appellants' attorney had no independent duty to investigate the claim, and in any event, no damages accrued to appellants as individual beneficiaries.
Jose Gresham, the decedent, died as a result of a train accident in South Carolina. He left behind seven children, from two different marriages. One of the children of the first marriage, Jo Ann Gresham, was appointed personal representative of the estate and retained Krupnick, Campbell, Malone, Roselli, Buser, Slama, and Hancock, P.A., to pursue a wrongful death action against National Railroad Passenger Corporation (Amtrak) and CSX Transportation, Inc. Appellants, the five children from the second marriage, hired appellee Wilton Strickland to represent their interests, even though they understood that only Jo Ann, as personal representative, could bring suit.
After being retained, Strickland wrote a letter to CSX's claims representative stating that he represented five of the beneficiaries. His letter acknowledged that Jo Ann had the authority to act on behalf of any estate claims but not with respect to any survivor claims. In conversations with the CSX representative, CSX took the position that it would not discuss any claims for wrongful death with anyone other than *580 the personal representative. Strickland also wrote to Jon Krupnick, lead counsel for the personal representative, informing him that he was not authorized to act on behalf of the five children Strickland represented.
Six months later, Krupnick wrote Strickland, asking him for appellants' consent to a CSX proposal wherein it agreed to stipulate to liability for the accident if the estate would agree to waive punitive damages. He ended his request by stating, "I'm not sure if I technically need your approval, but I think our interests are mutual and I, of course, want to keep you advised of the progress of this case." Krupnick's plan was to file a wrongful death action in Florida and then to pursue a survivor's action in South Carolina.
Strickland then discussed this suggestion with some or all of his clients. Some of them said he told them that punitive damages were not recoverable at all under Florida law. Some stated that they did not consent to waiving punitive damages. Nevertheless, Strickland sent Krupnick appellants' consent to waive punitive damages. Krupnick then filed suit and obtained a $2.8 million verdict for the estate and beneficiaries, each beneficiary recovering $400,000. On appeal, this court affirmed that judgment in May of 1995. See Nat'l R.R. Passenger Corp. (Amtrak) v. Ahmed, 653 So.2d 1055 (Fla. 4th DCA 1995). Unfortunately, the second half of Krupnick's plan did not fare so well. A survivor's action was filed in South Carolina, but summary judgment was entered in favor of the railroad based upon the res judicata effect of the Florida action.
In the meantime, the family of another train passenger, Paul Palank, was also pursuing an action against CSX. However, unlike the Gresham case, the attorneys for the Palank estate did not waive its punitive damage claim. When the Palank verdict was entered in 1997, the estate recovered $6.1 million in compensatory damages and $50 million in punitive damages for the accident. When appellants learned of this substantial punitive damage award, they hired an attorney and filed suit against Strickland in December 1997. When Jo Ann, the personal representative, learned of the Strickland lawsuit, she decided to join it. In March 1998, an amended complaint was filed naming as defendants both the Krupnick law firm and later the estate attorney Raymond Posgay.
After much discovery, motions for summary judgment were filed by the attorney defendants. However, before a ruling on them, Krupnick and Posgay settled with Jo Ann, as personal representative of the estate. The trial court then ruled in Strickland's favor on summary judgment, leading to this appeal.
For a party to recover for legal malpractice, three elements must be proven: (1) the attorney was employed by or in privity with the plaintiff(s); (2) the attorney neglected a reasonable duty to the client(s); and (3) the negligence proximately caused any loss to the plaintiff(s). Dadic v. Schneider, 722 So.2d 921, 923 (Fla. 4th DCA 1998). We conclude as a matter of law that neither element two nor three is present in this case, as a matter of law.
First, in Florida, the right to bring a punitive damages claim for wrongful death belongs exclusively to the personal representative of the estate. § 768.20, Fla. Stat. (1993); Hess v. Hess, 758 So.2d 1203, 1204-5 (Fla. 4th DCA 2000). Strickland's clients are survivors, and survivors are not entitled to individual punitive damages claims. Thus, Strickland could not have neglected any duty to his clients by not personally investigating any punitive damages claim. Appellants had no standing *581 to bring an action to recover for punitive damages because they were not entitled to collect them in any event. Further, in the instant case, the personal representative brought an action for legal malpractice against the Krupnick firm for failure to pursue the punitive damages claim, resulting in a settlement to the estate. The estate has recovered a monetary amount, and appellants will benefit as beneficiaries of the estate.
Second, even if Strickland should have investigated the punitive damages claim more carefully and not relied on the professional advice of the estate attorney, there is no showing that his negligence was the proximate cause of his clients' loss. Because the personal representative was responsible for pursuing the claim and she concluded that it was more advantageous to waive punitive damages for an admission of liability, the individual beneficiaries, at most, could have sought removal of the personal representative in the probate court. The probate code provides the causes for removal of a personal representative. Section 733.504, Florida Statutes (2000), states:
Causes of removal of personal representative. A personal representative may be removed and his or her letters revoked for any of the following causes, and the removal shall be in addition to any penalties prescribed by law:
(1) Adjudication of incompetency.
(2) Physical or mental incapacity rendering the personal representative incapable of the discharge of his or her duties.
(3) Failure to comply with any order of the court, unless the order has been superseded on appeal.
(4) Failure to account for the sale of property or to produce and exhibit the assets of the estate when so required.
(5) The wasting or maladministration of the estate.
(6) Failure to give bond or security for any purpose.
(7) Conviction of a felony.
(8) Insolvency of, or the appointment of a receiver or liquidator for, any corporate personal representative.
(9) The holding or acquiring by the personal representative of conflicting or adverse interests against the estate that will or may adversely interfere with the administration of the estate as a whole. This cause of removal shall not apply to the surviving spouse because of the exercise of the right to the elective share, family allowance, or exemptions, as provided elsewhere in this code.
(10) Revocation of the probate of the decedent's will that authorized or designated the appointment of such personal representative.
(11) Removal of domicile from Florida, if the personal representative is no longer qualified under part III of this chapter.
Generally, removal of a trustee should be predicated upon a clear showing of abuse or wrongdoing in the actual administration of the trust. In re Murphy's Estate, 336 So.2d 697, 699 (Fla. 4th DCA 1976) (minimal mismanagement or hostility with beneficiary insufficient to warrant removal of personal representative). Hostility or tension between a trustee and potential beneficiaries of the trust does not by itself constitute a ground for such removal. Id. at 699; Rand v. Giller, 489 So.2d 796, 799 n. 8 (Fla. 3d DCA 1986)(unanimous accord of beneficiaries to remove a personal representative is not by itself a ground for such removal). However, it would be nothing but sheer speculation as to whether a trial court would agree or disagree to remove the personal representative for a litigation strategy decision made in consultation *582 with her attorneys. Indeed, no case has been cited to us holding that disagreements over litigation are grounds for removal of a personal representative.
"[F]or proximate cause to exist, there must be such a natural, direct and continuous sequence between the negligent act and the injury that it can reasonably be said that but for the act the injury would not have occurred." McDonald v. Fla. Dep't. of Transp., 655 So.2d 1164, 1168 (Fla. 4th DCA 1995)(citing Jones v. Utica Mut. Ins. Co., 463 So.2d 1153 (Fla. 1985)). Here, one cannot say that "but for" the negligence of Strickland in failing to investigate the punitive damages claim the injury would not have occurred. The beneficiaries did not control the litigation decisions of the personal representative, and the strategy decision was not a ground for removal of the personal representative. The causal chain was thus broken by the independent acts of the personal representative.
For the foregoing reasons, we affirm the judgment of the trial court.
SHAHOOD and HAZOURI, JJ., concur.