NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

| | | |
|---|---|---|
| CHRISTINE HERENDEEN, as trustee of the bankruptcy estate of Christopher X. Hutchins, | ) ) ) ) | |
| Appellant, | ) ) | |
| v. | ) ) | Case No. 2D15-4300 |
| SAMUEL R. MANDELBAUM, ESQ.; KEVIN J. FITZSIMMONS, ESQ.; JOHN N. CAIN, ESQ.; and MANDELBAUM, FITZSIMMONS & HEWITT, P.A., | ) ) ) ) ) ) | |
| Appellees. | ) ) | |

Opinion filed October 25, 2017.

Appeal from the Circuit Court for Hillsborough County; Cheryl K. Thomas, Judge.

Scott A. Arthur and Lee D. Gunn, IV, of Gunn Law Group, P.A., Tampa, for Appellant.

Scott A. Cole and Melinda Thornton of Cole, Scott & Kissane, P.A., Miami; and Joseph T. Kissane and Paula A. Post of Cole, Scott & Kissane, P.A., Jacksonville, for Appellees.

LaROSE, Chief Judge.

Christine Herendeen, the trustee for Christopher Hutchins' bankruptcy estate, appeals a final summary judgment entered in favor of Samuel Mandelbaum, Kevin Fitzsimmons, John Cain, and Mandelbaum, Fitzsimmons & Hewitt (collectively, "Mandelbaum"). Mr. Hutchins retained Mandelbaum to defend him in a wrongful death lawsuit. Ms. Herendeen later sued Mandelbaum for legal malpractice, claiming that Mandelbaum failed to defend against a punitive damages claim asserted against Mr. Hutchins.

Ms. Herendeen maintains that the trial court improperly granted summary judgment. She argues that, as trustee, she can seek damages for the bankruptcy estate caused by a negligent lawyer. She also argues that the discharge of the wrongful death judgment by the bankruptcy court did not extinguish her cause of action for legal malpractice.

The trial court erred in concluding that the bankruptcy discharge extinguished a debt so as to preclude Ms. Herendeen's lawsuit. The trial court also erred in concluding that public policy barred Ms. Herendeen's effort to recover damages. Ms. Herendeen should be allowed to pursue her cause of action for legal malpractice against Mandelbaum. Accordingly, we reverse.

## Standard of Review

A trial court should grant a motion for summary judgment only if there are no genuine issues as to any material fact and the moving party is entitled to a judgment as a matter of law. Fla. R. Civ. P. 1.510(c). We review a summary judgment de novo. See Volusia Cty v. Aberdeen at Ormond Beach, L.P., 760 So. 2d 126, 130 (Fla. 2000).

- 2 -

## Background

Mr. Hutchins accidentally shot and killed Jessica Leigh Fraccalvieri. He pleaded guilty to manslaughter by culpable negligence. The trial court sentenced him to fifteen years in prison.

Ms. Fraccalvieri's estate sued Mr. Hutchins for wrongful death. He hired Mandelbaum to represent him. Because Mr. Hutchins was in prison, Mandelbaum decided not to have him attend the trial. Apparently, the defense was "to be as contrite and as apologetic as possible because [there was] no other way to defend this case. He killed a young mother." Mandelbaum presented no evidence about Mr. Hutchins' net worth. Nor did Mandelbaum move for a directed verdict as to punitive damages based on Mr. Hutchins' inability to pay. The jury returned a hefty verdict against Mr. Hutchins that included $500,000 in punitive damages. Belatedly, Mandelbaum sought relief from the punitive damages award, arguing that Florida law prohibits an award against a financially drained wrongdoer. The trial court refused to remit the award. It entered a final judgment against Mr. Hutchins.

A few months later, Mr. Hutchins filed for Chapter 7 bankruptcy protection. See 11 U.S.C. § 301 (2012). The bankruptcy court appointed Ms. Herendeen as the trustee of the bankruptcy estate. The bankruptcy court eventually discharged Mr. Hutchins' debts, including the wrongful death final judgment.

Although Mr. Hutchins never complained about Mandelbaum's representation, Ms. Herendeen sued the lawyers. She alleged that Mandelbaum failed to defend Mr. Hutchins properly against the punitive damages claim in the wrongful death case. Mandelbaum moved for summary judgment. The lawyers contended that

- 3 -

affirmative defenses eight and nine[1] barred Ms. Herendeen's claims. At the hearing on

Mandelbaum's motion, the parties agreed that the issue of breach of duty was not then

before the trial court. The trial court granted Mandelbaum's motion. This appeal

follows.

## Analysis

### A Discharged Judgment Does Not Bar the Trustee's Claim

We begin by discussing whether a judgment discharged in bankruptcy can

be considered "damage" to support a legal malpractice cause of action brought by the

bankruptcy trustee. Mandelbaum's ninth affirmative defense is not legally sound. Thus,

the trial court erred in entering summary judgment on that basis.

At the time he filed for bankruptcy, Mr. Hutchins had a potential legal

malpractice claim against Mandelbaum. This claim became the property of the

bankruptcy estate. As the Fifth Circuit explained:

> Such an estate comprises all "legal or equitable interests [of
> the debtor] in property as of the commencement of the
> [bankruptcy] case," which includes any "causes of action
> belonging to the debtor at the time the case is commenced."
> [In re Segerstorm, 247 F.3d 218, 223 (5th Cir. 2001)] (citing
> 11 U.S.C. § 541(a)(1) and La. World Exposition v. Fed. Ins.
> Co., 858 F.2d 233, 245 (5th Cir. 1988)). . . . The trustee of a
> debtor's bankruptcy estate may pursue any claims that are
> property of the bankruptcy estate. 11 U.S.C. § 323; Wieburg
> v. GTE Sw. Inc., 272 F.3d 302, 306 (5th Cir. 2001)
> ("Because the claims are property of the bankruptcy estate,
> the Trustee is the real party in interest with exclusive
> standing to assert them.").

---

[1]The eighth affirmative defense alleged that Ms. Herendeen's action was barred as a matter of public policy regarding recovery for punitive damages from a nonparty. The ninth affirmative defense alleged that Ms. Herendeen had not been damaged by the judgment because the debt was discharged in the bankruptcy proceeding.

<u>Stanley v. Trinchard</u>, 500 F.3d 411, 418 (5th Cir. 2007) (first and second alternation in original). "The law is well established that under § 541(a) of the Bankruptcy Code, '[a] bankruptcy trustee stands in the shoes of the debtor.' " <u>O'Halloran v. PricewaterhouseCoopers LLP</u>, 969 So. 2d 1039, 1046 (Fla. 2d DCA 2007) *(*quoting <u>Official Comm. of Unsecured Creditors of PSA, Inc. v. Edwards</u>, 437 F.3d 1145, 1150 (11th Cir. 2006)). "The Bankruptcy Code provides that property of the debtor estate includes 'all legal or equitable interests of the debtor in property as of the commencement of the case.' " <u>Official Comm. of Unsecured Creditors of PSA, Inc.</u>, 437 F.3d at 1149 (quoting 11 U.S.C. § 541(a)(1)). Ms. Herendeen could pursue the malpractice claim because it belonged to the estate upon filing of the Chapter 7 petition.

Mandelbaum asserts that Mr. Hutchins was not damaged by the punitive damages award because the bankruptcy court discharged that debt. However, the discharge of Mr. Hutchins' personal liability under the wrongful death judgment did not eliminate the debt of the bankruptcy estate. <u>See</u> <u>Camp v. St. Paul Fire & Marine Ins. Co.</u>, 616 So. 2d 12, 15 (Fla. 1993); <u>Stanley</u>, 500 F.3d at 425 (holding that bankruptcy discharge eliminates only a debtor's personal liability and not the debt itself and that a bankruptcy trustee stands in the shoes of the debtor and can bring a legal malpractice claim as trustee).

But, Mandelbaum asserts, the bankruptcy estate has no assets other than the potential recovery from this legal malpractice suit and a bad faith settlement lawsuit filed by special counsel for the bankrupt estate. Noting that the judgment debt was discharged without objection, Mandelbaum argues that the only person who could have brought a claim against the bankruptcy estate was Ms. Fraccalvieri's estate.

Mandelbaum presses that there is no "competing body of creditors" with an interest in the assets, save for the trustee and her attorneys.

Mandelbaum misses the mark.  The trustee and professionals acting for the estate are entitled to compensation.  See 11 U.S.C. § 330.  Ms. Herendeen, as trustee of the bankruptcy estate, stands in the shoes of Mr. Hutchins as to claims existing on the date of filing.  She is entitled to pursue such claims so as to maximize the assets of the bankruptcy estate.  To achieve that goal, Ms. Herendeen can pursue any claim that Mr. Hutchins could have pursued prior to filing bankruptcy.

### Public Policy Does Not Bar Recovery From Mandelbaum

Ms. Herendeen argues that the bankruptcy trustee can seek damages caused by Mandelbaum's failure to defend Mr. Hutchins against a punitive damages claim.  In the eighth affirmative defense, Mandelbaum "affirmatively allege[d] that [the] action is barred as a matter of public policy regarding recovery for punitive damages from a non-party to a punitive damage award."  In Mandelbaum's view, the punitive damages award rests with Mr. Hutchins, alone; after all, he killed Ms. Fraccalvieri.  The position is too facile.  Mandelbaum ignores the fact that the lawyers' alleged malpractice exposed Mr. Hutchins to punitive damages.  The parties have directed us to no Florida statutory or case law on point.  We are chary to conclude that Florida public policy insulates the lawyers from the consequences of the misconduct alleged by Ms. Herendeen.

"In a suit for legal malpractice, proof that the attorney's negligence proximately caused the client's harm is necessary for recovery."  Jones v. Law Firm of Hill & Ponton, 223 F. Supp. 2d 1284, 1287 (M.D. Fla. 2002) (citing Sure Snap Corp. v. Baena, 705 So. 2d 46, 48 (Fla. 3d DCA 1997)).  "For a party to recover for legal

malpractice, three elements must be proven: (1) the attorney was employed by or in privity with the plaintiff(s); (2) the attorney neglected a reasonable duty to the client(s); and (3) the negligence proximately caused any loss to the plaintiff(s)." Gresham v. Strickland, 784 So. 2d 578, 580 (Fla. 4th DCA 2001) (citing Dadic v. Schneider, 722 So. 2d 921, 923 (Fla. 4th DCA 1998)).

In trying to avoid a public policy bar, Ms. Herendeen relies on Ging v. American Liberty Insurance Co., 423 F.2d 115 (5th Cir. 1970). There, the Fifth Circuit held that summary judgment for the insurer was inappropriate where an insurer allegedly breached its duty to defend its client in a lawsuit seeking compensatory and punitive damages. Ms. Herendeen argues that an attorney who breaches its duty to defend a client against a punitive damages claim should be treated no differently than the insurer. Mandelbaum observes that Ging is an insurance bad faith case and, thus, inapposite. Mandelbaum's point is well taken.

Ging, 423 F.2d 116, involved an insurer who undertook the complete defense of its insured in a case arising out of a deadly automobile accident. The plaintiff sought compensatory and punitive damages from the insured. Id. Indisputably, the insurer owed a duty to act in good faith toward its insured. Id. Upon assuming the defense, the insurer advised its insured that "the suit sought recovery for punitive damages which were not covered by the policy of insurance." Id. at 117. It advised that the insured could retain separate counsel. Id. As the case progressed, the insurer failed to apprise the insured of repeated settlement offers. Id. at 117-18. Significantly, the insurer did not relay to its insured its concerns about a likely award of punitive damages. Id. at 117. The insurer also failed to timely report the outcome of the trial to its insured. Id. at 118. The trial resulted in an award of compensatory damages of

$14,695, later reduced to $11,195, and punitive damages of $25,000. Id. at 117. Being left in the dark by the insurer, the insured was personally liable for the punitive damages. Id. at 118.

Ging does not hinge on the award of punitive damages. Nor does it find foundation as a legal malpractice case. It is a case where questions of material fact remained as to the insurer's duty to act in good faith in trying to resolve the lawsuit within policy limits. At its core, Ging centers on the insurer's failure to keep its insured apprised of developments in the case. The insurer failed to notify the insured of settlement opportunities, to warn about the actual difficulties litigation posed to the insured, to advise the insured of the outcome of the litigation, and to conduct the settlement negotiations in good faith. Id. at 120-21. Ging does not stretch as far as Ms. Herendeen would like.

But Mandelbaum fares no better in asserting that Lohr v. Byrd, 522 So. 2d 845 (Fla. 1988), is dispositive. Unfortunately for the lawyers, that case does not fit nicely here. In Lohr, the supreme court refused to allow a punitive damages award to be taken from the deceased tortfeasor's estate. The purpose of punitive damages is to punish the offender, not to compensate the victim. Id. at 846-47. Taking money from the estate would punish the innocent and make the estate an indemnitor of the guilty tortfeasor. Obviously, upon the death of the tortfeasor, taking money away from the estate's beneficiaries would serve no purpose to which punitive damages are addressed.

Florida law does not allow indemnification against punitive damages. Queen v. Clearwater Elec., Inc., 555 So. 2d 1262, 1266 (Fla. 2d DCA 1989) ("Florida public policy prohibits liability insurance coverage for punitive damages assessed

against a person because of his wrongful conduct." (citing U.S. Concrete Pipe Co. v. Bould, 437 So. 2d 1061 (Fla. 1983))).  But that is not what Ms. Herendeen seeks.  She correctly observes that no public policy absolves Mandelbaum from the toll of the lawyers' alleged malpractice.

This makes sense.  Punitive damages "operate as 'private fines' intended to punish the defendant and to deter future wrongdoing."  Engle v. Liggett Grp., Inc., 945 So. 2d 1246, 1262 (Fla. 2006) (quoting Cooper Indus., Inc. v. Leatherman Tool Grp., Inc., 532 U.S. 424, 432 (2001)).  But, it is equally clear that punitive damages should not financially cripple the tortfeasor.  Thus, "evidence of defendant's financial ability to pay punitive damages is admissible, that is to say that it is permissible when considering punitive damages to allow the introduction of evidence of financial worth."  Rinaldi v. Aaron, 314 So. 2d 762, 763 (Fla. 1975).  "If defendant's financial worth is meager, it would be to his advantage to introduce such evidence in order to mitigate the damage award."  Id. at 765.

Ms. Herendeen alleges that Mandelbaum failed to properly defend the suit.  By not presenting any evidence of Mr. Hutchins' financial wherewithal, Mandelbaum arguably exposed him to $500,000 in punitive damages.  See, e.g. Hunt v. Dresie, 740 P.2d 1046, 1057 (Kan. 1987) (holding that client was not barred from recovering all damages in legal malpractice suit assessed against him in previous case); Scognamillo v. Olsen, 795 P.2d 1357, 1361 (Colo. App. 1990) (same); Picadilly, Inc. v. Raikos, 555 N.E.2d 167, 169-70 (Ind. Ct. App. 1990) (same but client failed to prove essential elements of legal malpractice claim) (vacated on other grounds, 582 N.E.2d 338, 345 (Ind. 1991) (holding that legal malpractice claims are not assignable)).  If a lawyer is hired to represent someone in a lawsuit and negligently fails to raise a

meritorious defense causing harm to this client, the client should have recourse against the negligent lawyer. "But for the legal malpractice, the client would have had no judgment against him." Hunt, 740 P.2d at 1057.

As the Kansas Supreme Court held,

> [t]he damages [the client] had to pay under the [previous] judgment included damages called punitive damages from the vantage point of that lawsuit. From the vantage point of this lawsuit, should Hunt be successful, all the damages are simply those which proximately resulted from his attorneys' negligence; they are no longer properly called punitive damages. If they were called punitive damages and the trial court's decision properly denied their recovery, then any attorney representing a client who might be assessed punitive damages in a lawsuit could rest easy, secure in the knowledge that any improper handling of the suit, even intentional actions, could not subject the attorney to any malpractice liability at all.

Id. (emphasis added). Similarly, a Colorado appellate court held that "the punitive damages assessed in the underlying case are part and parcel of the damages plaintiffs suffered as a result of defendants' alleged negligence." Scognamillo, 795 P.2d at 1361 ("In a legal malpractice action based on an attorney's breach of his duty to represent his client in a prior case, it is the defendant attorney's conduct and its consequences, rather than the conduct of the client that resulted in the underlying case, which governs the analysis of damages. Thus, if the defendant attorney's negligence results in entry of a judgment when there otherwise would have been no judgment, the proper measure of damages is the entirety of the prior judgment regardless of the theory upon which the prior judgment was entered or the nature of the damages assessed thereunder." (citing Hunt, 740 P.2d 1046)).

Admittedly, the Georgia Court of Appeals has held that allowing the tortfeasor to shift its liability for punitive damages to former counsel "would be contrary

- 10 -

to the public policy of Georgia, even if former counsel were found liable for legal malpractice in the action in which punitive damages were awarded." Paul v. Smith, Gambrell & Russell, 599 S.E.2d 206, 211 (Ga. Ct. App. 2004). We think Paul is out of step with other jurisdictions. Moreover, the reasoning underlying its holding is not enlightening.

Although the awarded punitive damages were intended to punish Mr. Hutchins, allowing Ms. Herendeen to proceed with the malpractice claim will not improperly shift punitive damages to Mandelbaum or make Mandelbaum an indemnitor. Rather, Mandelbaum may have to respond to the results of the alleged legal malpractice.

## Conclusion

The trial court erred in concluding that the bankruptcy trustee could not pursue a claim on a discharged debt and in concluding that public policy barred Ms. Herendeen's claim against Mandelbaum. Therefore, we must reverse the final judgment and remand for further proceedings. We caution the parties that our decision is in no way intended to decide whether Mandelbaum enjoys "judgmental immunity." See Crosby v. Jones, 705 So. 2d 1356, 1358 (Fla. 1998). Nor do we express any view of whether Mandelbaum breached a duty owed to Mr. Hutchins that caused him damages.

Reversed and remanded.


WALLACE and ROTHSTEIN-YOUAKIM, JJ., Concur.