**2022 IL 127327**

# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

_____

(Docket No. 127327)

MIDWEST SANITARY SERVICE, INC., *et al.*, Appellees, v. SANDBERG, PHOENIX & VON GONTARD, P.C., *et al.*, Appellants.

*Opinion filed September 22, 2022.*

JUSTICE NEVILLE delivered the judgment of the court, with opinion.

Chief Justice Anne M. Burke and Justices Theis, Michael J. Burke, and Carter concurred in the judgment and opinion.

Justices Overstreet and Holder White took no part in the decision.

**OPINION**

¶ 1 The plaintiffs, Nancy Donovan, Bob Evans Sr., and Midwest Sanitary Service, Inc. (Midwest), filed a legal malpractice action in the circuit court of Madison County against their attorneys, defendants John Gilbert, Narcisa Symank, and the law firm of Sandberg, Phoenix, & Von Gontard, P.C. (Sandberg). The complaint

sought, *inter alia*, reimbursement for punitive damages Midwest paid in the underlying action that it alleged it would not have had to pay but for the professional negligence of its attorneys.

¶ 2        The circuit court denied the defendant attorneys' motion to dismiss but certified the following question for immediate appeal pursuant to Illinois Supreme Court Rule 308 (eff. Oct. 1, 2019):

"Does Illinois' public policy on punitive damages and/or the statutory prohibition on punitive damages found in 735 ILCS 5/2-1115 bar recovery of incurred punitive damages in a legal malpractice case where the client alleges that, but for the negligence of the attorney in the underlying case, the jury in the underlying case would have returned a verdict awarding either no punitive damages or punitive damages in a lesser sum?"

The appellate court answered the question in the negative and affirmed the judgment of the circuit court. See 2021 IL App (5th) 190360. We allowed the defendant attorneys' petition for leave to appeal pursuant to Illinois Supreme Court Rule 315 (eff. Oct. 1, 2020). We also allowed the Illinois Defense Counsel to file an *amicus curiae* brief. Ill. S. Ct. R. 345 (eff. Sept. 20, 2010). For the following reasons, we now answer the certified question in the negative, affirm the judgment of the appellate court, and remand the cause to the circuit court for further proceedings.

¶ 3                                  I. BACKGROUND

¶ 4                        A. Underlying Action in the Circuit Court

¶ 5        On March 31, 2014, Paul Crane, an employee of Midwest, filed a complaint against Midwest for retaliatory discharge and alleged that his employment with Midwest was terminated after he reported numerous health and safety violations to the Illinois Environmental Protection Agency (IEPA). Following a jury trial, Crane was awarded $160,000 in compensatory damages against Midwest, Nancy, and Bob Sr. and $625,000 in punitive damages against Midwest. On appeal, the appellate court affirmed this award. See *Crane v. Midwest Sanitary Service, Inc.*,

¶ 6                                    B. Legal Malpractice Complaint

¶ 7         After losing the underlying retaliatory discharge action and paying compensatory and punitive damages to its former employee, Midwest filed a two-count legal malpractice complaint against its attorneys, John Gilbert, Narcisa Symank, and Sandberg. In the complaint, Midwest alleged that the attorneys breached their duty in the underlying action in the following ways: (1) failed to list all witnesses intended to be called at trial in compliance with Illinois Supreme Court Rule 213(f) (eff. Jan. 1, 2018), resulting in six witnesses for the defense being barred from testifying; (2) failed to disclose a voicemail recorded message from a Midwest customer as a lost or destroyed document in response to opposing counsel's request to produce, resulting in a "missing evidence" instruction being given by the court to the jury; (3) failed to (a) object to the language of the limiting instruction given by the court regarding the testimony of defense witnesses concerning the destroyed voicemail message or (b) to tender an alternative instruction, thereby forfeiting an appellate argument regarding the instruction that was given; (4) elicited testimony during cross-examination of IEPA investigator Chris Cahnovsky that (a) he referred Midwest to the Attorney General's office for prosecution and (b) the Attorney General's office had accepted the case; and (5) failed and refused to discuss potential settlement with opposing counsel, while the case was pending in the appellate court, by responding to counsel's invitation to negotiate by stating, "no," without discussion or informing Midwest.

¶ 8         Midwest alleged in its complaint that, absent the failures by its attorneys, the result of the trial in the underlying retaliatory discharge action would have been different and that less or no damages would have been paid, including the $625,000 in punitive damages. Count I of the complaint seeks recovery of $603,932.03 in damages plus costs on behalf of all plaintiffs, and count II seeks recovery of $1,068,932.03 in damages plus costs on behalf of Midwest.

¶ 9         In response to Midwest's legal malpractice complaint, the attorneys filed a combined motion to dismiss and strike the complaint pursuant to section 2-619.1 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619.1 (West 2018)). The motion alleged that Midwest's request for punitive damages violates section 2-1115

of the Code (*id.* § 2-1115) and Illinois public policy. The circuit court denied the attorneys' motion, finding that Midwest's request to recover the punitive damages it paid in the underlying action against the attorneys in the legal malpractice action did not violate section 2-1115 of the Code or the public policy of Illinois. The attorneys subsequently filed a motion to reconsider and to certify for immediate appeal, pursuant to Illinois Supreme Court Rule 308 (eff. Oct. 1, 2019), the question of whether Midwest could recover in the legal malpractice action, with the attorneys' alleged negligence being a proximate cause, the punitive damages it paid in the underlying action.

¶ 10                                   C. Certified Question

¶ 11        On August 9, 2019, the circuit court granted the attorneys' motion to certify for immediate appeal the following question:

> "Does Illinois' public policy on punitive damages and/or the statutory prohibition on punitive damages found in 735 ILCS 5/2-1115 bar recovery of incurred punitive damages in a legal malpractice case where the client alleges that, but for the negligence of the attorney in the underlying case, the jury in the underlying case would have returned a verdict awarding either no punitive damages or punitive damages in a lesser sum?"

¶ 12        On April 28, 2021, the appellate court answered the certified question in the negative and affirmed the judgment of the circuit court, which denied the attorneys' motion to dismiss and strike the legal malpractice complaint. In answering the certified question in the negative, the appellate court found that Midwest was not barred, by section 2-1115 of the Code or the public policy in Illinois, from recovering, in a legal malpractice action, punitive damages it paid in the underlying retaliatory discharge action that were proximately caused by the alleged negligence of the attorneys, because the punitive damages it paid in the underlying action are not punitive damages in the legal malpractice action but compensatory damages that compensate Midwest for the actual "out-of-pocket" losses sustained. See 2021 IL App (5th) 190360. The defendants now appeal to this court.

¶ 13                                 II. ANALYSIS

¶ 14         Initially, we note that this is an appeal in a legal malpractice case, brought pursuant to Illinois Supreme Court Rule 308 (eff. Oct. 1, 2019), to answer the question of whether, in a legal malpractice action, punitive damages incurred in an underlying action, which were proximately caused by the alleged negligence of the attorneys in the underlying action, can be recovered as compensatory damages from the allegedly negligent attorneys in a legal malpractice action.

¶ 15         " 'In order to recover damages in a legal malpractice action in Illinois, a plaintiff must establish what the result would have been in the underlying action which was improperly litigated by the plaintiff's former attorney.' " *Goldfine v. Barack, Ferrazzano, Kirschbaum & Perlman*, 2014 IL 116362, ¶ 24 (quoting *Eastman v. Messner*, 188 Ill. 2d 404, 411 (1999)). The plaintiff must prove that he suffered actual damages proximately caused by the attorney's malpractice. *Id.* To establish proximate causation in a legal malpractice case, the plaintiff must prove a "case within a case," meaning the plaintiff must establish the underlying action and what the result would have been in that action absent the alleged negligence. *Merritt v. Hopkins Goldenberg, P.C.*, 362 Ill. App. 3d 902, 910 (2005). In other words, the plaintiff must establish that, "but for" the attorney's negligence, the damages alleged would not have been incurred. *Id.* In a legal malpractice case, the plaintiff bears the burden of proving that damages were incurred because of the attorney's negligence. *Sheppard v. Krol*, 218 Ill. App. 3d 254, 259 (1991).

¶ 16         Even if negligence on the part of the attorney is established, no action will lie against the attorney unless that negligence proximately caused damage to the client. The existence of actual damages is, therefore, essential to a viable cause of action for legal malpractice. *Northern Illinois Emergency Physicians v. Landau, Omahana & Kopka, Ltd.*, 216 Ill. 2d 294, 306-07 (2005).

¶ 17         This legal malpractice action has not yet gone to trial; however, the damages Midwest seeks to recover were paid to satisfy the judgment entered against it, which includes the $625,000 in punitive damages actually paid in the underlying action. We reiterate that it is well settled in Illinois that, to succeed and recover damages in a legal malpractice case, the legal malpractice plaintiff must establish that the defendant attorney caused the injury. *Goldfine*, 2014 IL 116362, ¶ 24. To the extent that Midwest cannot prove that it lost at trial and incurred a punitive damages award

against it because of the attorneys' negligence, Midwest will not be able to recover damages.

¶ 18    The defendant attorneys sought an immediate appeal pursuant to Illinois Supreme Court Rule 308 (eff. Oct. 1, 2019) to address the question of whether section 2-1115 of the Code or the public policy of Illinois bars a plaintiff, in a legal malpractice action, from recovering, as compensatory damages, punitive damages incurred in an underlying action because of the defendant attorneys' alleged negligence in the underlying action.

¶ 19    Because this appeal requires this court to construe section 2-1115 of the Code, it involves a question of law. *Board of Education of the City of Chicago v. Moore*, 2021 IL 125785, ¶ 18 (statutory construction of a statute presents a question of law). Therefore, our review is *de novo*. *Rozsavolgyi v. City of Aurora*, 2017 IL 121048, ¶ 21.

¶ 20                    A. Statute Barring Punitive Damages Against Lawyers
and Public Policy Issues

¶ 21    The certified question contains two elements: (1) whether section 2-1115 of the Code prohibits plaintiffs who bring a legal malpractice action from recovering from their defendant attorneys punitive damages actually paid by the legal malpractice plaintiffs in the underlying action because of the attorneys' alleged negligence in that action and (2) whether recovery of punitive damages from their attorneys violates the public policy of Illinois.

¶ 22                    1. Section 2-1115 Bars Punitive Damages

¶ 23    Section 2-1115 provides, in pertinent part, "In all cases, whether in tort, contract or otherwise, in which the plaintiff seeks damages by reason of legal *** malpractice, no punitive *** damages shall be allowed." 735 ILCS 5/2-1115 (West 2018).

¶ 24    The attorneys first maintain that section 2-1115 of the Code prohibits the plaintiffs from recovering punitive damages against them. When interpreting statutory language, we are to give effect to the plain and ordinary meaning, avoiding

absurd, unreasonable, unjust, or inconvenient results. See *Cassidy v. China Vitamins, LLC*, 2018 IL 122873, ¶ 17; *In re Mary Ann P.*, 202 Ill. 2d 393, 406 (2002). In determining the plain and ordinary meaning of a statute, we must consider the statute in its entirety, the subject addressed, and the apparent intent of the legislature when it enacted the statute. *Hayashi v. Illinois Department of Financial & Professional Regulation*, 2014 IL 116023, ¶ 16; *Blum v. Koster*, 235 Ill. 2d 21, 29 (2009). Unless the words are defined within the statute itself, they will be "interpreted as taking their ordinary, contemporary, common meaning." *Sandifer v. United States Steel Corp.*, 571 U.S. 220, 227 (2014). Courts may find words' ordinary, contemporary, common meaning by looking at what they meant when the statute was enacted, which is often by referencing dictionaries. See *id.*

¶ 25                    2. Punitive Damages Distinguished From
                          Compensatory Damages

¶ 26        Black's Law Dictionary defines "punitive damages" or "exemplary damages" as

> "damages on an increased scale, awarded to the plaintiff over and above what will barely compensate him for his property loss, where the wrong done to him was aggravated by circumstances of violence, oppression, malice, fraud, or wanton and wicked conduct on the part of the defendant, and are intended to solace the plaintiff for mental anguish, laceration of his feelings, shame, degradation, or other aggravations of the original wrong, or else to punish the defendant for his evil behavior or to make an example of him." Black's Law Dictionary 352 (5th ed. 1979).

¶ 27        Compensatory damages are defined as such damages as will "compensate the injured party for the injury sustained, and nothing more; such as will simply make good or replace the loss caused by the wrong or injury." *Id.* To determine whether the recovery Midwest is seeking violates the statute, we must analyze the damages sought. In other words, we must consider whether the damages compensate Midwest for the pecuniary injury suffered and are, therefore, compensatory damages or whether the damages punish the attorneys for their alleged misfeasance or nonfeasance and are, therefore, punitive damages.

¶ 28 The attorneys argue that the punitive damages paid in the underlying retaliatory discharge action are also classified as punitive damages in the legal malpractice action. Midwest argues that the punitive damages incurred in the underlying action as proximately caused by the attorneys' negligence are compensatory damages in the legal malpractice action. We agree with Midwest. We find that the punitive damages Midwest paid in the underlying retaliatory discharge action are an element of compensatory damages in the legal malpractice action because they do not punish the attorneys but instead replace the loss caused by the attorneys' alleged misfeasance or nonfeasance. In other words, the damages make Midwest whole by compensating it for the entirety of its pecuniary loss (the compensatory and punitive damages Midwest paid in the underlying retaliatory discharge action caused by the attorneys' alleged negligence).

¶ 29                           3. Cases That Bar "Lost" Punitive Damages

¶ 30 We recognize that this court, in *Tri-G, Inc. v. Burke, Bosselman & Weaver*, 222 Ill. 2d 218, 226 (2006), interpreted section 2-1115 of the Code and also addressed public policy concerns with respect to the recovery of lost punitive damages in legal malpractice cases. In *Tri-G*, the plaintiffs initiated a legal malpractice action against the defendants, seeking to recover damages sustained in the underlying action in the form of actual compensatory damages and lost punitive damages (punitive damages that would have been awarded to them) but for the defendants' negligence. *Id.* at 224-25. We found that lost punitive damages could not be recovered in legal malpractice actions for several reasons. First, we found that allowing such recovery would be illogical where "the jury has already awarded full compensation to the plaintiff for all the damages it actually sustained." *Id.* at 267. Second, we found that allowing the recovery of lost punitive damages in a legal malpractice action contravenes the nature of punitive damages, as they are not awarded as compensation "but serve instead to punish the offender and to deter that party and others from committing similar acts of wrongdoing in the future." *Id.* Third, we found that section 2-1115 of the Code "expressly bars recovery of punitive damages in a legal malpractice action" and, if the "General Assembly has determined that lawyers cannot be compelled to pay punitive damages based on their own misconduct, *** it would be completely nonsensical to hold that they can

nevertheless be compelled to pay punitive damages attributable to the misconduct of others." *Id.* at 267-68.

¶ 31    In reaching our conclusion in *Tri-G*, this court gave significant consideration to the Supreme Court of California's decision in *Ferguson v. Lieff, Cabraser, Heimann & Bernstein, LLP*, 69 P.3d 965 (Cal. 2003). In *Ferguson*, plaintiffs filed a legal malpractice action against the defendants, their attorneys in the underlying class action, seeking to recover, as compensatory damages in the legal malpractice action, punitive damages that were lost or not recovered because of their attorneys' negligence in prosecuting the underlying class action. *Id.* at 968. The Supreme Court of California found that legal malpractice plaintiffs may not recover lost punitive damages as compensatory damages. *Id.* at 969. In so doing, the *Ferguson* court stated several reasons. First, it found that "[i]mposing liability for lost punitive damages on negligent attorneys would therefore neither punish the culpable tortfeasor [citation], nor deter that tortfeasor and others from committing similar wrongful acts in the future." *Id.* at 970. Second, it found that permitting recovery of lost punitive damages as compensatory damages violates the public policy against speculative damages, as punitive damages require a moral determination of the amount of damages and not a factual amount based on actual damages. *Id.* at 971.

¶ 32    Third, the standard of proof for punitive damages and compensatory damages is different in that recovering lost punitive damages requires the plaintiff to establish by a preponderance of the evidence that, but for attorney negligence, the jury would have found clear and convincing evidence of oppression, fraud, or malice. *Id.* at 972. Fourth, allowing recovery of lost punitive damages would adversely affect the overall ability of courts to manage their caseloads by making settlement more difficult in cases that involve punitive damages because of the potential for dissatisfied clients to seek recovery for negligent undervaluation of punitive damages claims. *Id.* Fifth, allowing recovery of lost punitive damages as compensatory damages would exact a societal cost, increasing the financial burden on lawyers and likely making it more difficult for consumers to obtain legal services or obtain recovery for legal malpractice. *Id.*

¶ 33    The present case is distinguishable from both *Tri-G* and *Ferguson*. First, Midwest, one of the plaintiffs in the present case, was a defendant in the underlying

action and *paid* compensatory and punitive damages in the underlying action. Midwest is not speculating but is certain about the amount of punitive damages it paid in the underlying action, and it now seeks to be made whole in the legal malpractice action. Midwest had punitive damages assessed against it in the underlying retaliatory discharge action and, in the legal malpractice action, it is now alleging that it was forced to pay punitive damages in the underlying action because of the negligence of its attorneys. Therefore, in this malpractice case, the punitive damages Midwest paid in the underlying retaliatory discharge action are compensatory damages because they replace the money Midwest paid in the underlying action. Permitting Midwest to recover in this malpractice case the punitive damages it paid in the underlying retaliatory discharge action would not punish the attorneys. Instead, the punitive damages become an element of the claim for compensatory damages and make Midwest whole because they replace the money Midwest paid in the underlying action.

¶ 34       Second, the damages Midwest seeks in the present case are not speculative. The exact amount of punitive damages paid is known—$625,000. Should a jury find that the attorneys' alleged negligence proximately caused the pecuniary loss Midwest suffered in the retaliatory discharge action, then the jury would not be speculating but would know the amount of damages required to compensate Midwest for its injury.

¶ 35       Third, because the present case involves punitive damages Midwest already paid in the underlying retaliatory discharge action, and not lost punitive damages (punitive damages not recovered in the underlying action), Midwest would have no difficulty proving all the damages it paid in the underlying retaliatory discharge action. Before awarding damages in the legal malpractice action, the jury would have to determine whether the attorneys' negligence was the proximate cause of Midwest being required to pay damages in the underlying action. If the jury determines that the attorneys' alleged negligence proximately caused Midwest to pay punitive damages in the underlying action, the jury would then proceed to award Midwest the total compensatory damages that were caused by the attorneys' negligence.

¶ 36       Fourth, there is no risk of settlement difficulties in cases, such as this, involving recovery for paid punitive damages in an underlying action because the damages

paid are fixed and not speculative. The underlying retaliatory discharge verdict constitutes demonstrative evidence of the compensatory and punitive damages Midwest paid, and the total of these damages are compensatory damages and would represent the actual pecuniary loss suffered by Midwest in the underlying action.

¶ 37   Fifth, in the present case, there is no risk of a societal cost—potentially subjecting attorneys to a greater financial liability or consumers running the risk of not being able to obtain legal services or obtain recovery from legal malpractice— because the damages recoverable in this case are based on (1) proof of the attorneys' negligent acts and (2) the attorneys' negligence being the proximate cause of the damages actually paid. In the present case, Midwest has already incurred a set amount of punitive damages in the underlying action. Legal malpractice plaintiffs, like Midwest, who pay punitive damages in the underlying action are only seeking, as an element of compensatory damages, the punitive damages already paid in the underlying action.

¶ 38                    4. Cases That Award Paid Punitive Damages

¶ 39   While we found no Illinois cases where plaintiffs in a legal malpractice action recovered punitive damages *paid* in an underlying action from their attorneys, we find instructive cases from other jurisdictions holding that punitive damages paid in the underlying action are recoverable from attorneys as compensatory damages in legal malpractice actions.

¶ 40   In *Hunt v. Dresie*, 740 P.2d 1046 (Kan. 1987), the plaintiff, Jack Hunt, brought a legal malpractice action against the defendants, Grey Dresie (his attorney) and the law firm. Hunt alleged that, but for the negligence of the attorneys allowing the statute of limitations to run on his defense in the underlying action, he would not have lost the underlying action and, therefore, would not have incurred $20,000 in actual damages and $600,000 in punitive damages. *Id.* at 1048. Accordingly, Hunt alleged that the attorneys were liable for his entire pecuniary injury—$620,000. *Id.* The appellate court determined that the attorneys were liable for all the damages Hunt paid, including the punitive damages awarded in the underlying action. *Id.* at 1056-57. The Supreme Court of Kansas, in affirming the judgment of the appellate court, cited the reasoning of the appellate court in support of its decision:

> "The damages Hunt had to pay [in the underlying action] included damages called punitive damages from the vantage point of that lawsuit. From the vantage point of *this* lawsuit, should Hunt be successful, all the damages are simply those which proximately resulted from his attorneys' negligence; they are no longer properly called punitive damages." (Emphasis in original and internal quotation marks omitted.) *Id.* at 1057.

¶ 41   We agree with the reasoning of the Kansas Supreme Court. The punitive damages Midwest paid in the underlying retaliatory discharge action, because of the alleged negligence of the defendant attorneys, were punitive damages Midwest paid in the *underlying action*, which became an element of its claim for compensatory damages in this malpractice action. Therefore, as to this legal malpractice action, should a jury determine the attorneys' negligence proximately caused Midwest to pay punitive damages in the underlying retaliatory discharge action, those damages are no longer punitive; instead, they are an element of compensatory damages because they make Midwest whole and replace its loss of $625,000.

¶ 42   Similarly, in *Scognamillo v. Olsen*, 795 P.2d 1357 (Colo. App. 1990), the Colorado Court of Appeals found that Peter Scognamillo and Harry Faircloth (the legal malpractice plaintiffs) were entitled to recover the punitive damages paid in the underlying action as compensatory damages in the legal malpractice action. In *Scognamillo*, the legal malpractice plaintiffs, like the plaintiff in the present case, were defendants in the underlying action. In that underlying action, Scognamillo and Faircloth formed a company with several others and were sued by certain investors in that company. *Id.* at 1358. These investors brought claims of fraud, breach of contract, and civil conspiracy in the sale of distributorships against all the defendants in the underlying action, including Scognamillo and Faircloth. *Id.* Attorney Robert Olsen and his law firm defended all the defendants in the underlying action, including Scognamillo and Faircloth. *Id.*

¶ 43   At the conclusion of trial in the underlying action, a judgment was entered against all the defendants, including Scognamillo and Faircloth, in the amount of $214,830 in actual damages and $849,020 in punitive damages. *Id.* Scognamillo and Faircloth appealed the judgment using a different law firm. *Id.* That appeal was dismissed as untimely filed. *Id.* Thereafter, Scognamillo entered into a settlement

- 12 -

agreement with the investors releasing him from all claims, appeals, and judgments contingent upon his payment of $200,000. *Id.*

¶ 44 Scognamillo and Faircloth brought a legal malpractice action against their attorneys (Olsen and his law firm) seeking recovery of the damages paid in the underlying action—including the punitive damages or, as to Scognamillo, his settlement amount. *Id.* at 1358-59. Scognamillo and Faircloth alleged that, but for their attorneys' negligence in defending them in the underlying action, they would have settled prior to the entry of the judgment in the underlying action. *Id.* at 1359.

¶ 45 At the conclusion of the legal malpractice trial, the jury found in favor of Scognamillo and Faircloth and against the attorneys. *Id.* The jury entered an award based on the amount each legal malpractice plaintiff had paid or was required to pay based on the underlying judgment, and the award was offset based on, *inter alia*, the legal malpractice plaintiffs' contributory negligence and the amount they would have paid if the underlying case had been settled on the terms upon which they were willing to agree. *Id.* at 1359-60.

¶ 46 The attorneys appealed the legal malpractice judgment, arguing, *inter alia*, that the trial court erred in allowing the legal malpractice plaintiffs to include the "punitive damages assessed against them in the [underlying action] as a component of their actual and compensatory damages" in the legal malpractice action because it violated "a number of public policy considerations." *Id.* at 1360-61. The Colorado Court of Appeals held:

> "[I]f the defendant attorney's negligence results in entry of a judgment when there otherwise would have been no judgment, the proper measure of damages is the entirety of the prior judgment regardless of the theory upon which the prior judgment was entered or the nature of the damages assessed thereunder. [Citation.]
>
> We see no reason to deviate from these principles in determining the proper measure of damages to be applied here." *Id.* at 1361.

In reaching this conclusion, the *Scognamillo* court reasoned:

- 13 -

"[T]he punitive damages contested here are not, as was the case in the [underlying action], a separate issue considered and imposed for the purpose of punishing a defendant for wrongful conduct.

A major thrust of the [legal malpractice] plaintiffs' negligence claim is that [the attorneys] had negligently evaluated and advised the [legal malpractice] plaintiffs during the [underlying action] ***. Thus, the punitive damages assessed in the underlying case are part and parcel of the damages [the legal malpractice] plaintiffs suffered as a result of defendants' alleged negligence." *Id.*

¶ 47    We find the reasoning of the *Scognamillo* court instructive in the present case. Midwest alleges that the punitive damages it paid in the underlying action were proximately caused by its attorneys' alleged negligence. If a jury in the legal malpractice action determines that, but for the alleged negligence of the attorneys, Midwest would have been successful in the underlying action and no judgment would have been entered against it, it follows that Midwest would not have paid any damages, including the punitive damages. It also follows that Midwest should be repaid for the full pecuniary loss it suffered as a result of a judgment that would not have been entered against it but for its attorneys' negligence.

¶ 48    In the case under review, if the attorneys were found to be negligent in their defense of Midwest and proximately caused Midwest to be unsuccessful in the underlying action and forced to pay punitive damages, they can be held responsible for the entirety of the damage award entered against Midwest. The award of punitive damages in the underlying action would no longer be punitive in the legal malpractice action because it would not punish the attorneys. It would instead become an element of compensatory damages because it would repay and make Midwest whole for the pecuniary loss it suffered as a result of the attorneys' alleged negligence.

¶ 49    We find that, if the punitive damages Midwest paid in the underlying action are found to be proximately caused by the attorneys' alleged negligent conduct in the underlying retaliatory discharge action, they are an element of compensatory damages in the legal malpractice action and are "part and parcel" of the whole of the pecuniary injury Midwest suffered in the underlying action. See *id.*; see also *Hunt*, 740 P.2d at 1057. Therefore, when the punitive damages paid in an

- 14 -

underlying action are proximately caused by the attorney's alleged negligence, they are an element of compensatory damages in a malpractice action when the damages are certain and not speculative, compensate the plaintiff for its losses, and do not punish the negligent attorney. Accordingly, we find that the recovery of paid punitive damages as compensatory damages in a malpractice action would neither violate section 2-1115 of the Code nor the public policy of this state.

¶ 50                          III. CONCLUSION

¶ 51      For the foregoing reasons, we answer the certified question in the negative, we affirm the judgment of the appellate court, and we remand the cause to the circuit court for further proceedings.

¶ 52      Certified question answered.

¶ 53      Affirmed and remanded.

¶ 54      JUSTICES OVERSTREET and HOLDER WHITE took no part in the consideration or decision of this case.