2022 IL App (3d) 210306

Opinion filed December 21, 2022

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2022

| | | |
|---|---|---|
| FIRSTMERIT BANK, N.A., as Successor-in-Interest to George Washington Savings Bank, | ) ) ) | Appeal from the Circuit Court of the 12th Judicial Circuit, Will County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | |
| WILLIAM J. McENERY, | ) ) | Appeal No. 3-21-0306 Circuit No. 10-L-477 |
| Defendant | ) ) | |
| (The Darlene E. McNulty Revocable Trust, Dated June 10, 2009, and The Michael McNulty Revocable Trust, Dated June 10, 2009, Claimants-Appellants). | ) ) ) ) | Honorable Theodore J. Jarz, Judge, Presiding. |

_____

PRESIDING JUSTICE HOLDRIDGE delivered the judgment of the court, with opinion.
Justices McDade and Peterson concurred in the judgment and opinion.

**OPINION**

¶ 1     The plaintiff, FirstMerit Bank (Bank), the successor-in-interest to George Washington Savings Bank, issued a notice of citation to the defendant, William J. McEnery, to turnover 500 shares of stock to satisfy a money judgment. During these proceedings, the Darlene E. McNulty Revocable Trust dated June 10, 2009, and the Michael McNulty Revocable Trust dated June 10, 2009 (collectively, the McNulty Trusts) filed an adverse claim as to 200 of the 500 subject shares,

claiming that they were *bona fide* purchasers and owned the shares free and clear of the Bank's lien. The Bank filed a motion for summary judgment, which the circuit court granted.

¶ 2                                    I. BACKGROUND

¶ 3         This case originated as a citation proceeding pursuant to section 2-1402 of the Code of Civil Procedure (Code) (735 ILCS 5/2-1402 (West 2010)). On June 10, 2010, the Bank obtained a judgment against McEnery for $1,843,129.14 and, that same day, recorded the judgment with the Will County Recorder of Deeds as document number R2010057902. The Bank caused a citation to discover assets to be issued, which was served on McEnery on July 1, 2010. At that time, the William J. McEnery Revocable Trust dated April 22, 1993 (McEnery Trust), with McEnery as beneficiary, owned 500 shares (or a 50% interest) in Mid-Iron Club, Inc. (Mid-Iron), an Illinois Corporation that owned and operated a nine-hole golf course located in Lemont, Illinois (Cook County). The Bank also issued citations to third parties at this time but not to Mid-Iron.[1]

¶ 4         On February 18, 2011, the court entered an order compelling McEnery to turnover certain personal property, including his shares in Mid-Iron. On March 11, 2011, the Bank served a third-party citation to discover assets on Mid-Iron. Thereafter, related bankruptcy proceedings caused an automatic stay, which prevented the Bank from enforcing its lien. In July 2012, the automatic stay was modified to allow the Bank to enforce its lien as to the Mid-Iron shares. On September 20, 2013, the Bank filed a second motion seeking to turn over the Mid-Iron shares, which the court granted on January 14, 2015.

¶ 5         On October 4, 2018, the McNulty Trusts filed an adverse claim as to 200 of McEnery's shares in Mid-Iron (735 ILCS 5/12-710 (West 2018)). The McNulty Trusts stated McEnery

---

[1]The relevant citations issued in this case were continued and remained effective throughout the proceedings. See Ill. S. Ct. R. 277(f) (eff. July 1, 1982); see also *Kirchheimer Brothers Co. v. Jewelry Mine, Ltd.*, 100 Ill. App. 3d 360, 363 (1981).

transferred 200 of his 500 shares in Mid-Iron to the Darlene McNulty Trust on August 16, 2010. The shares were subsequently reallocated between the McNulty Trusts. Prior to this transfer, the McNulty Trusts held the other 500 shares (or 50% interest) in Mid-Iron. The McNulty Trusts alleged that they were *bona fide* purchasers without knowledge or notice of the Bank's citation lien per section 2-1402(m) of the Code (735 ILCS 5/2-1402(m) (West 2010)), which they supported with Darlene and Michael's affidavits. The affidavits provided that they had no knowledge of the citation or awareness of facts indicating a significant probability that a citation was pending against McEnery. A promissory note showed that McEnery sold the shares for $84,000.[2]

¶ 6 The Bank filed its answer and affirmative defenses to the adverse claim. First, the Bank argued that the McNulty Trusts waived their right to file an adverse claim and interest in the shares by failing to appear in the proceedings for over seven years. It argued that the McNulty Trusts, as shareholders and officers of Mid-Iron, had knowledge of its lien by way of the third-party citation issued on March 15, 2011, and did not file the adverse claim until October 4, 2018. Second, the Bank argued that laches applied, and the McNulty Trusts did not act with due diligence with regard to filing their adverse claim and asserting their interest in the 200 shares, which caused the Bank to suffer prejudice. Third, the Bank argued that the McNulty Trusts failed to state a claim. Specifically, the Bank provided that the notice of citation and the citation were public record as of July 10, 2010. Thus, the Bank concluded that the McNulty Trusts had knowledge of the citation at the time they purchased the shares and were not *bona fide* purchasers.

¶ 7 The Bank filed a motion for summary judgment and proceeded under the theory that the

---

[2]There is no dispute that the Mid-Iron shares were paid in full. There was a payment agreement providing McEnery with $84,000 payable as $34,000 cash, together with interest at the rate of 5% per annum, payable on January 1, 2011, and $50,000 towards the rezoning of Mid-Iron.

McNulty Trusts had constructive knowledge of the citation and took ownership of the 200 shares subject to the Bank's lien. Following a hearing, the court granted the motion.

¶ 8 The McNulty Trusts filed a motion to reconsider, which the court granted and vacated its previous order. The court continued the matter for additional argument and again granted the motion for summary judgment. The court found the McNulty Trusts had constructive notice and they were not *bona fide* purchasers. The McNulty Trusts appeal.

¶ 9 II. ANALYSIS

¶ 10 On appeal, the McNulty Trusts argue that they were *bona fide* purchasers without notice of the Bank's citation based on the plain language of section 2-1402(m) of the Code (735 ILCS 5/2-1402(m) (West 2010)) and, therefore, the court erred as a matter of law when it granted summary judgment in the Bank's favor. The Bank argues that the court's ruling was proper.

¶ 11 Summary judgment is proper if the pleadings, depositions, and admission on file—together with any affidavits—show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2018). The purpose of summary judgment is not to try a question of fact but, rather, simply to determine whether a genuine issue of triable fact exists. *Ross Advertising, Inc. v. Heartland Bank & Trust Co.*, 2012 IL App (3d) 110200, ¶ 27. This court reviews a summary judgment ruling *de novo*. *Id.* ¶ 28.

¶ 12 A. Statutory Interpretation

¶ 13 Section 2-1402(m) of the Code (735 ILCS 5/2-1402(m) (West 2010)) enables a judgment creditor to commence supplementary proceedings to enforce a judgment by serving a citation to discover assets upon a judgment debtor, and provides, as follows:

> "The judgment or balance due on the judgment becomes a lien when a citation is served in accordance with subsection (a) of this Section. The lien binds nonexempt

4

personal property, including money, choses in action, and effects of the judgment debtor as follows:

> (1) When the citation is directed against the judgment debtor, upon all personal property belonging to the judgment debtor in the possession or control of the judgment debtor or which may thereafter be acquired or come due to the judgment debtor to the time of the disposition of the citation.

> (2) When the citation is directed against a third party, upon all personal property belonging to the judgment debtor in the possession or control of the third party or which thereafter may be acquired or come due the judgment debtor and comes into the possession or control of the third party to the time of the disposition of the citation.

> The lien established under this Section does not affect the rights of citation respondents in property prior to the service of the citation upon them and does not affect the rights of bona fide purchasers or lenders without notice of the citation. The lien is effective for the period specified by Supreme Court Rule."

¶ 14    Here, the Bank's lien was perfected on July 1, 2010, when the notice of citation was served on McEnery. See *Midwest Commercial Funding, LLC v. Kelly*, 2022 IL App (1st) 210644, ¶ 7. The McNulty Trusts claim that they are *bona fide* purchasers without notice of the lien when they purchased the subject shares on August 16, 2010. Thus, the issue is whether the McNulty Trusts had notice within the meaning of section 2-1402(m) of the Code. Notably, this section of the Code does not define the term "notice," and no Illinois court has defined it in this context. The McNulty Trusts argue that the statute requires that they had actual notice for the Bank's lien to take priority, and the Bank argues that both actual and constructive notice are applicable.

5

¶ 15    "The most fundamental rule in statutory construction is to give effect to the legislative intent." *Murray v. Chicago Youth Center*, 224 Ill. 2d 213, 235 (2007). The language of the statute itself is the best indicator of the legislature's intent. *Id.* When interpreting statutory language, we are to give effect to the plain and ordinary meaning, avoiding absurd, unreasonable, unjust, or inconvenient results. *Midwest Sanitary Service, Inc. v. Sandberg, Phoenix & Von Gontard, P.C.*, 2022 IL 127327, ¶ 24. Further, "[u]nless the words are defined within the statute itself, they will be 'interpreted as taking their ordinary, contemporary, common meaning.' " *Id.* (quoting *Sandifer v. United States Steel Corp.*, 571 U.S. 220, 227 (2014)). The statute must be viewed as a whole where this court construes words and phrases, not in isolation, but relative to other relevant statutory provisions. *Cooke v. Illinois State Board of Elections*, 2021 IL 125386, ¶ 52.

¶ 16    "We likewise keep in mind the subject addressed by the statute and the legislature's apparent attempt in enacting it." *Id.* Here, "[t]he provisions of section 2-1402 are to be liberally construed, and the statute gives the court broad powers to compel the application of discovered assets or income in order to satisfy a judgment." *Dowling v. Chicago Options Associates, Inc.*, 365 Ill. App. 3d 341, 347 (2006); see also *Bentley v. Glenn Shipley Enterprises, Inc.*, 248 Ill. App. 3d 647, 651 (1993) ("[t]hese provisions create a comprehensive framework for discovery of assets through supplementary proceedings and are to be liberally construed").

¶ 17    The McNulty Trusts argue that section 2-1402(m) refers to only actual notice based on its plain, ordinary, and accepted meaning, and if the legislature intended to include constructive notice, it "could have" done so. The Bank contends that this argument is made without any legal authority, "notice" refers to both actual and constructive notice, and section 2-1402(m) is to be liberally construed.

¶ 18    Black's Law Dictionary defines "notice" as "[l]egal notification required by law or

agreement, or imparted by operation of law as a result of some fact (such as the recording of an instrument); definite legal cognizance, *actual or constructive*, of an existing right or title \*\*\*." (Emphasis added.) Black's Law Dictionary 1164 (8th ed. 2004). This definition of notice, which includes both actual and constructive notice, is in line with the well-established case law relating to *bona fide* purchasers, which is pertinent to our analysis.

¶ 19    A *bona fide* purchaser "is a person who takes title \*\*\* in good faith for value without notice of outstanding rights or interests of others." *Daniels v. Anderson*, 162 Ill. 2d 47, 57 (1994). A purchaser cannot be a *bona fide* purchaser if he or she had actual or constructive notice of an outstanding right of another party. *Bank of New York v. Unknown Heirs & Legatees*, 369 Ill. App. 3d 472, 477 (2006). Stated another way, a purchaser who receives notice of an outstanding interest, and pays consideration, does so at his or her own peril with respect to the holder of the outstanding interest. *Daniels*, 162 Ill. 2d at 60. "The law reasons that consummation of the purchase, after notice of the outstanding interest, is a fraud upon the holder of that interest." *Id.*

¶ 20    Although the vast majority of jurisprudence surrounding *bona fide* purchasers pertains to real property, instead of personal property, "[a] term of well-known legal significance can be presumed to have that meaning in a statute." *Advincula v. United Blood Services*, 176 Ill. 2d 1, 17 (1996); see *Morissette v. United States*, 342 U.S. 246, 263 (1952) ("where Congress borrows terms of art in which are accumulated the legal tradition and meaning of centuries of practice, it presumably knows and adopts the cluster of ideas that were attached to each borrowed word in the body of learning from which it was taken"); see also *County of Lake v. Cushman*, 40 Ill. App. 3d 1045, 1049 (1976) ("[w]hen the words have a well settled meaning through judicial interpretation, they must be understood, when used in a statute, to have that meaning unless a different meaning is unmistakably indicated" (internal quotation marks omitted)). Here, "notice" and "*bona fide*

7

purchasers" are terms of well-known legal significance that we presume to have the same meaning in a statute without any further indication from the legislature.

¶ 21     The McNulty Trusts argue that this court should consider article 8 of the Uniform Commercial Code (UCC), which governs investment securities, for its definition as to when a purchaser has notice of an adverse claim. 810 ILCS 5/8-105 (West 2010). However, we decline to look to the UCC for further guidance as we found the language of section 2-1402(m) of the Code to have their common meaning without further indication from the legislature. As such, "we will give effect to the statute's plain meaning without resort to other aids of statutory construction." *In re Jarquan B.*, 2017 IL 121483, ¶ 22.

¶ 22     For these reasons, we find the exception for *bona fide* purchasers within section 2-1402(m) of the Code applies to purchasers without actual or constructive notice of the citation.

¶ 23                                        B. Notice

¶ 24     We now turn to whether the McNulty trusts had actual or constructive notice of the citation. Black's Law Dictionary defines "actual notice" as "[n]otice given directly to, or received personally by, a party." Black's Law Dictionary 1164 (8th ed. 2004). The McNulty Trusts filed unrebutted affidavits stating that neither Darlene nor Michael had knowledge of the citation or awareness of facts indicating a significant probability that a citation was pending against McEnery. "When facts are established by affidavit and are uncontradicted by opposing affidavit, those facts are taken as true and are admitted for the purpose of summary judgment." (Internal quotation marks omitted.) *Barrett v. FA Group, LLC*, 2017 IL App (1st) 170168, ¶ 32. Therefore, the record establishes that neither McNulty Trust had actual notice of the Bank's citation.

¶ 25     Next, we consider whether the McNulty Trusts had constructive notice of the citation. Black's Law Dictionary defines "constructive notice" as "[n]otice arising by presumption of law

8

from the existence of facts and circumstances that a party had a duty to take notice of, such as a registered deed or a pending lawsuit; notice presumed by law to have been acquired by a person and thus imputed to that person." Black's Law Dictionary 1164 (8th ed. 2004). In other words, constructive notice is knowledge that the law imputes to a purchaser, regardless of whether the purchaser had actual knowledge at the time of the purchase. *US Bank National Ass'n v. Villasenor*, 2012 IL App (1st) 120061, ¶ 59. Accordingly, we presume that purchasers have constructive notice of matters of public record (known as record notice). See *Tillman v. Pritzker*, 2021 IL 126387, ¶ 27. However, the McNulty Trusts argue that the mere filing of a citation cannot constitute constructive notice because it would essentially nullify the *bona fide* purchasers' exception in section 2-1402(m). This suggests that the Bank would need to do something more than just file and serve the citation to protect its interest. However, the 88th General Assembly addressed this concern when considering an amendment to section 2-1402 in 1993 (88th Gen. Assem., Senate Bill 914, 1993 Sess.). During the Senate's third reading of Senate Bill 914, the following colloquy occurred:

> "SENATOR PETKA: *** Senate Bill 914 is an amendment to the Code of Civil Procedure. This bill is a recommendation from the Chicago Bar Association. It came out of the Judiciary Committee on the Agreed Bill List. What this bill does is resolve a conflict among the courts in connection with a conflict between creditors and third parties. It places a lien—it provides that a judgment becomes a lien when a citation to discover assets is served on the judgment debtor or on a third party who holds the property of the judgment debtor. I would move for its adoption. I know of no opponents whatsoever.
>
> * * *

9

SENATOR CULLERTON: The—Senator Petka, as I understand it, under current law, a served citation operates as a restraining order, prohibiting the party to whom it is directed from disposing of or transferring property. Now, with this bill, this provides that a citation to discover assets becomes a lien on the property. *Does this require that the lien be recorded*, and if not, could—does it—do you have any idea as to what the priority of this lien is, as against other liens?

\*\*\*

SENATOR PETKA: It does not have—Senator, *it does not have to be recorded* and all effective liens enjoy a priority status." (Emphases added.) 88th Ill. Gen. Assem., Senate Proceedings, Apr. 16, 1993, at 13-14 (statements of Senators Petka and Cullerton).

¶ 26 This transcript supports the plain language of the statute in that a creditor need not do anything other than serve a citation to the debtor or third party to perfect its lien against subsequent creditors or purchasers. We note that, at that time, the statute included the exception for *bona fide* purchasers. See Pub. Act 88-48 (eff. July 6, 1993) (amending 735 ILCS 5/2-1402).

¶ 27 Here, the Bank obtained a judgment against McEnery and recorded it with the Will County Recorder of Deeds on June 10, 2010. The Bank then issued a citation, which was served on McEnery, and therefore perfected, on July 1, 2010. The citation is a matter of public record, as it was filed with the Will County Circuit Clerk. McEnery then sold the subject shares on August 16, 2010, to the Darlene McNulty Trust. Thus, we find that the McNulty Trusts had constructive notice of the citation and cannot meet the exception for *bona fide* purchasers without notice of the citation provided in section 2-1402(m) of the Code. 735 ILCS 5/2-1402(m) (West 2010).

¶ 28 We also address that McNulty Trusts take issue with notice being provided in Will County,

10

instead of Cook County, and argue that (1) Mid-Iron is located in Cook County and had possession of the shares and (2) the McNultys resided in Cook County. The McNulty Trusts point to a June 2021 motion to compel turnover the Bank filed against Mid-Iron in which the Bank alleged that Mid-Iron had possession of the subject shares *at that time*. There are a couple of problems with this argument. First, when a citation is served on the judgment debtor, a lien binds nonexempt personal property belonging to the judgment debtor in the possession or control of the judgment debtor. 735 ILCS 5/2-1402(m)(1) (West 2010). There is no allegation that McEnery did not possess or control the subject shares when the lien was perfected on July 1, 2010. Mid-Iron's alleged possession of the shares in 2021 is without consequence as to the possession and control of the shares when the lien was perfected. Also, regarding the McNultys' residence and Mid-Iron's location in Cook County, the McNulty Trusts do not further develop this argument or cite any authority to support its position that notice needs to be provided in the county where the purchaser resides or, when dealing with shares of stock, in the county where the business is located. Therefore, we need not consider it. See *Hosey v. City of Joliet*, 2019 IL App (3d) 180118, ¶ 17 (rejecting an argument when it was not fully developed and omitted authority); see Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020) (arguments must include the appellant's reasons with citation to authority); see also *Vancura v. Katris*, 238 Ill. 2d 352, 370 (2010) ("An issue that is merely listed or included in a vague allegation of error is not 'argued' and will not satisfy the requirements of [Rule 341]."). We emphasize that supplementary proceedings against a judgment debtor may be commenced in the court in which the judgment was entered. Ill. S. Ct. R. 277(d) (eff. July 1, 1982). The parties do not dispute that McEnery was a resident of Will County, where the judgment was entered.

¶ 29        For the foregoing reasons, we affirm the circuit court's judgment finding that no genuine

11

issue of material fact existed and that the Bank was entitled to judgment as a matter of law.

¶ 30                                  III. CONCLUSION

¶ 31        For the foregoing reasons, the judgment of the circuit court of Will County is affirmed.

¶ 32        Affirmed.

*FirstMerit Bank, N.A. v. McEnery*, 2022 **IL App (3d) 210306**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Will County, No. 10-L-477; the Hon. Theodore J. Jarz, Judge, presiding. |
| **Attorneys for Appellant:** | D. Cass Wennlund and Michael A. Pascarella, of Wennlund & Associates, of New Lenox, for appellants. |
| **Attorneys for Appellee:** | Cornelius P. Brown and Amy E. Daleo, of Cohon Raizes & Regal LLP, of Chicago, for appellee. |